# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

FILED

14 SEP -8 PM 3: 50

ROBERT HOLLAND
    Plaintiff,

vs.

ROBERT DEJONG CEO CREDIT ONE BANK (N. A.),  )
CREDIT ONE BANK (N.A.),  )
PAULA MCFARLAND, ASST. CNTR. (COB N.A.),  )
ADELE BURTON PORTFOLIO MGR. (COB N.A.),  )
FNBM, LLC,  (a.k.a. CREDIT ONE BANK),  )
CREDIT ONE FINANCIAL, LLC,  )
SHERMAN CAPITAL, LLC,  )
MEETING STREET PARTNERS II, INC.  )
SHERMAN CAPITAL MARKETS, LLC (SCM)  )
TODD KUHL DIRECTOR (SCM)  )
BENJAMIN NAVARRO,  )
SCOTT SILVER,  )
RUSTY KENDALL,  )
ROBERT RODERICK,  )
SHERMAN FINANCIAL GROUP, LLC,  )
BRETT HILDEBRAND, PRINCIPAL FNBM, LLC,  )
CEO/MM SHERMAN ORIGINATOR III, LLC,  )
SHERMAN ORIGINATOR III, LLC,  )
JON MAZZOLLI, DIRECTOR OF SOGIII, LLC,  )
KEVIN BRANNIGAN PRINCIPAL OF SOGIII, LLC,  )
LES GUTIERREZ PRINCIPAL OF SOGIII, LLC,  )
RAZOR CAPITAL,  )
CHRIS WINKLER CEO/MM RAZOR CAPITAL,  )
RAZOR CAPITAL II, LLC,  )
CHRIS WINKLER PRINCIPAL OF RC II, LLC,  )
TODD ANDERSON DIRECTOR RCII, LLC,  )
FREDRICK NIELSEN (MM) RC II, LLC,  )
THE STENGER & STENGER LAW FIRM,  )
PHILIP STENGER PRINCIPAL SS LAW FIRM,  )
DENISE HALLETT ATTORNEY SS LAW FIRM,  )
DUSTIN H. ALLEN ATTORNEY SS LAW FIRM,  )
STEPHANIE SHARER PARALEGAL SS LAW FIRM.  )
          Defendants.  )

2.14CV 326

1

**VERIFIED**
**RICO COMPLAINT**

## I. INTRODUCTION

1. This is a civil action for money damages brought to vindicate the plaintiffs' rights under the First, Fifth and Fourteenth Amendment to the United States Constitution, Due Process, Equal Protection, RICO 18 USC 1962, FDCPA, FCRA, TILA, CCRA, Hobbs Act, Travel Act, Indiana Civil RICO, the Indiana State Constitution, Bad Faith Breach of Contract, Theft, **Fraud, Common Law Fraud,** Mail Fraud, Wire Fraud, Fraud, Bank Fraud, Extortion, Usury, Money Laundering, Harassment, Defamation, Unlawful Collection of a Debt and various theories of common law and negligence, including but not limited to fraud/misrepresentation, negligence, corrupt business influence, negligent training and supervision, gross negligence, abuse of process, malicious prosecution, defamation, invasion of privacy, civil conspiracy, and intentional infliction of emotional distress against the Defendants, jointly and severally.

The Associate in Fact Defendants agreed and infiltrated, took over, and manipulated various corporate legal entities (forms of corporations) to conceal their ownership interests, commingle their funds, commit illegal activities, and frustrate and ultimately avoid legal action against them through conspiracy to engage in two or more acts (pattern) of racketeering activity and/or the collection of an unlawful debt, directly or indirectly participated in (and/or aided in) such activity, in an enterprise the activities of which affected interstate commerce, including but not limited to using, the mail, wire and banks to commit their schemes to defraud directly causing substantial injury to Robert Holland in his person, business, property and profession.

The Plaintiff Robert Holland alleges that the Defendants are knowingly and willfully collected and attempting to collect an unlawful debt and moneys not owed to them (fraudulent

2

transactions, illegally fraudulently inflated credit card billing statements, usury, excessive, fees, fines, etc.) in an unconscionable manner through the use of mail and wire (electronic means) utilizing financial institutions (mail, wire, and bank fraud, money laundering, etc.) and engaged in a pattern of criminal activity by and/or through the Credit One Bank RICO Enterprise and legal entities beyond its control, such as independent banks, law firms, accounting firms, or public relations firms in violation of 18 USCS 1962 (a), (b), (c) and (d).

In the alternative, the Plaintiff Robert Holland alleges that the Defendants are knowingly and willfully attempting to collect an unlawful debt (Illegally fraudulently inflated credit card billing statements) through the use of mail and wire (electronic means) utilizing financial institutions (mail, wire, and bank fraud, money laundering, etc.) and engaged in a pattern of criminal activity by and/or through the Credit One Bank, Sherman Originator III and Razor Capital II, LLC Enterprise and legal entities beyond its control, such as independent banks, law firms, accounting firms, or public relations firms in violation of 18 USCS 1962 (a), (b), (c) and (d).

The Plaintiff Robert Holland alleges that the "predicate acts" under both RICO (including Indiana Civil RICO) consist of a sequence of events, over years, that all have the same and common purpose, and that that purpose is to defraud credit card customers like Holland, causing Robert Holland injury to his person, business, property and profession in the unlawful attempts to collect a debt and moneys not owed to them.

The Plaintiff Robert Holland brings this action to secure the redress of grievances from the unlawful collection of debt and unlawful credit and collection actions committed by the

3

defendants.  The Plaintiff alleges alleges that the defendants and others known and unknown)

have engaged in a pattern of racketeering activity that consists of multiple acts indictable under

Title 18, United States Code, Section 1951 the Hobbs Act including but not limited to Mail

Fraud, Wire Fraud, Bank Fraud, Money Laundering and Extortion.  These and other predicate

acts are part of a "common scheme" and "pose a threat of continuing criminal activity which

have an affect on interstate commerce.

## TABLE OF CONTENTS

| Section | | Page # |
|---|---|---|
| 1. INTRODUCTION | paragraph 1 | 1-4 |
| 2. JURISDICTION | paragraphs 2 | 6 |
| 3. VENUE | paragraphs 3 - 6 | 6 |
| 4. PARTIES | paragraphs 7 – 37 | 6-30 |
| 5. THE FACTS OF THE CASE | paragraphs 38 - 199 | 30-65 |
| 6. CAUSES OF ACTION | paragraphs 183–194 | 65-67 |
| COUNT I - RICO, 1962(c) | paragraphs 200–201 | 65 |
| COUNT II – RICO, 1962(a) | paragraphs 202–204 | 65-66 |
| COUNT III – RICO, 1962(b) | paragraphs 205–207 | 66 |
| COUNT IV – RICO, 1962(d) | paragraphs 208-213 | 66-67 |
| COUNT V – CONSPIRACY | paragraphs 208-213 | 67 |
| 7. RELIEF SOUGHT | | 67 |
| 8. DEMAND FOR JURY TRIAL | | 68 |
| 9. VERIFICATION | | 68 |

**EXHIBIT A – RAZOR CAPITAL II, LLC SC NOTICE OF CLAIM**
**EXHIBIT B – CREDIT ONE BANK, N.A. BILL OF SALE Sept. 20, 2010**
**EXHIBIT C – SHERMAN ORIGINATOR III, LLC BILL OF SALE Sept. 17, 2010**
**EXHIBIT D – STENGER & STENGER LAW FIRM LETTER July 26, 2011**
**EXHIBIT E – STENGER & STENGER LAW FIRM LETTER May 30, 2012**
**EXHIBIT F – STENGER & STENGER LAW FIRM LETTER March 13, 2013**
**EXHIBIT G – CREDIT ONE BANK STATEMENT**
**EXHIBIT H – PURCHASE AND SALE AGREEMENT May 13, 2013**
**EXHIBIT I – ROBERT HOLLAND CREDIT REPORT**
**EXHIBIT J - SHERMAN ORIGINATOR III, LLC BILL OF SALE May 14, 2010**
**EXHIBIT K – TODD ANDERSON AFFIDAVIT OF VERIFICATION/VALIDATION**

## II.  JURISDICTION

2.  Jurisdiction is based upon 18 U.S.C. § 1962 (RICO), 15 U.S.C. 1692 (FDCPA), 15 U.S.C. 1601 (TILA), 15 U.S.C. 1601 et seq. (FCBA), 15 U.S.C. 1681 (FCRA),  Pub.L. 111−24, 123 Stat. 1734, H.R. 627, enacted May 22, 2009 (Credit Card Act of 2009)(CCRA), 15 U.S.C. 1693 (EFTA), and upon 28 U.S.C. §§1331, 1332, 1343, and 1367 on the pendent jurisdiction of this court to entertain claims arising under state law, state statute (ICPA), (IUCCC) and various theories of negligence and common law.

## III.  VENUE

3.  Venue is proper in this Judicial District by virtue of 28 U.S.C. Section 1391 and 18 USC 1965, and 15 USC 1692.

4.  The causes of action alleged herein arises from factual allegations occurring in this judicial district.  On information and belief, it is alleged that each of the named Defendants resides in and/or has significant contacts in this judicial district,

5.  The Plaintiffs residence is located in the City of Gary, Lake County, Indiana, and

6.  The amount in controversy is in excess of $75,000.00.

## IV.  PARTIES

### A.  Plaintiff

7.  The Plaintiff, Robert Holland, was at all material times relevant to this complaint a citizen and individual consumer residing in the City of Gary, Lake County, Indiana.

### B.  The Defendants - Persons pursuant to RICO

8.  ROBERT DEJONG CEO CREDIT ONE BANK (N.A.) is the head of the operations of the bank and oversees all aspects of operations and sets bank policy.  He has the duty to oversee and

6

monitor all the functions of the various departments in the bank regarding financial transactions and other important functions so has to formulate the rules and regulations in the bank and ensure compliance with State and Federal law. The President/Chief Executive Officer is responsible for the overall direction and administration of programs and services provided by the Bank; ensures that all aspects of the Bank's activities obtain maximum profits commensurate with the best interest of shareholders, customers, employees, and the public. The CEO has responsibilities as a top tier director, decision maker, leader, manager and executor of the company. The CEO's role as communicator involves the press and the rest of the outside world, as well as the organization's management and employees; the decision-making role involves high-level decisions about policy and strategy. As a leader of the bank, the CEO advises the board of directors, motivates employees, and drives change within the organization. As a manager, the CEO may preside over some of the organization's day-to-day operations. The CEO reports to the Board of Directors as the highest ranking official of the Bank. All executive officers of the Bank report to the Chief Executive Officer. Robert Dejong is also, President and Treasurer of Credit One Financial, LLC, and Scott Silver is the Secretary of Credit One Financial, LLC. The position of Chief Executive Officer is directly responsible for attaining all established Bank operational and financial goals. Robert Dejong is being sued in his individual and professional capacity. Credit One Bank and Credit One Financial have the same address. Address: 585 Pilot Road, Las Vegas, Nevada 89119

    9. CREDIT ONE BANK (N.A.) **is a wholly owned subsidiary of the Sherman Financial Group, LLC. Credit One Bank, N.A.** or **Credit One**, is a U.S. based bank specializing in credit cards. It has corporate offices in Las Vegas, Nevada. The bank is held by

7

Credit One Financial, a bank holding company registered in Nevada. Credit One Financial is a wholly owned subsidiary of Sherman Financial Group, LLC. As of February 2011, Credit One services approximately 2 million cardholders across the United States. Credit One operates under a CEBA national bank charter (OCC Charter Number: 20291). This type of charter affects the bank's lending and deposit functions. Requirements are set forth in an amendment to the Bank Holding Company Act (BHCA), the Competitive Equality Banking Act of 1987, hence the term CEBA bank. In order to qualify for this type of bank charter, Credit One can engage only in credit card activities. CEBA banks may not accept demand deposits or deposits that the depositor may withdraw by check or similar means for payment to third parties. They may also not accept any savings or time deposits of less than $100M unless they are used as collateral for secured credit card loans. And, they may not engage in the business of making commercial loans. Any deposits are insured by the Federal Deposit Insurance Corporation (FDIC). Credit One's FDIC Certificate Number is 25620. Credit One Bank is a sub-prime credit card issuer. Its logo and advertising/marketing materials are strikingly similar to Capital One Bank. Credit One Bank targets individuals with less than favorable credit that have a difficult time obtaining a credit card and are desperate to have a credit card in a world that it is increasingly a necessity to have one. Credit One Bank lures its customers into obtaining the credit card by advertising the ease of use and the opportunity to rebuild their credit rating. Credit One Bank was at all times relevant to this complaint, a corporation that has significant business interests, makes significant commercial transactions and has a continuous systematic presence in the State of Indiana.
Address: 585 Pilot Road, Las Vegas, Nevada 89119

   10. PAULA MCFARLAND, ASSISTANT CONTROLLER CREDIT ONE BANK (N.A)

8

ensures that bank operation internal "controls" and policies prevent inaccuracies in accounting statements. As assistant controller she implements and monitor bank transactions to avoid losses because of errors, fraud or technological breakdowns. As assistant controller she reviews periodic financial data to ensure that it is "fair" and complete. ("Fair" means objective in accounting or finance parlance.) Complete financial statements include balance sheet, statement of profit and loss, statement of cash flows and statement of retained earnings. The assistant controller responsibilities include, but are not limited to managing operational data and ensuring data integrity and accuracy, managing system hardware and software applications, development of operational procedures and documentation of data flow, assists in the month end closing and financial reporting process including account analysis and reconciliation, and assists in special accounting and financial projects as necessary. Paula McFarland is being sued in her individual and professional capacity.

Address: 585 Pilot Road, Las Vegas, Nevada 89119

11. ADELE BURTON, PORTFOLIO SERVICES MANAGER CREDIT ONE BANK, (N.A.) is responsible for the collection, recording, transfer and retrieval of Credit One Bank electronic data information (i.e., business records) and helps maintain data system integrity. Ms. Burton verifies the accuracy of the information, prepares affidavits, reports and manages data storage and retrieval systems. Ms. Burton is familiar with the procedures used by Credit One Bank in maintenance, protection and transfer of electronic data files and data system. Adele Burton is being sued in her individual and professional capacity.

Address: 585 Pilot Road, Las Vegas, Nevada 89119

12. FNBM, LLC, (a.k.a. CREDIT ONE BANK by merger/acquisition) Credit One Bank

9

began operations as a full service bank under the name First National Bank of Marin (FNBM) in San Rafael, California on July 30, 1984. FNBM maintained a wide range of products until 1995 when it began focusing primarily on two types of products, partially and fully secured credit cards. FNBM received a limited purpose designation from the Office of the Comptroller of the Currency (OCC), a bureau of the United States Department of the Treasury, in June 1996. Limited purpose banks offer only a narrow product line. The bank moved from San Rafael, California to Las Vegas, Nevada in November 1998. FNBM obtained its CEBA status in March 2005 and subsequently changed its name to Credit One Bank, N.A. on February 1, 2006. The March 2005 acquisition of First National Bank of Marin is intended to provide Sherman with the capability to originate subprime credit card receivables. This acquisition has materially increased Sherman's assets as well as its debt and its financial leverage. According to the **operating agreement** between First National Bank of Marin, Las Vegas, Nevada, and The Office of the Comptroller of the Currency dated March 10, 2005, the duly elected and acting Board of Directors of the Bank were as follows: **Benjamin W. Navarro, Scott E. Silver**, S. Chris Jones, **Brett A. Hildebrand**, **Robert DeJong**, Berkman Hong. Additionally, Sherman Financial Group has an agreement with Outsourcing Solutions Inc. (OSI), the nation's largest receivables management firm, under which OSI provides receivables and collection services and Sherman provides marketing services.

Fnbm, LLC filed as a **Foreign Limited-Liability Company** in the **State of Nevada** on Tuesday, March 22, 2005 and is approximately nine years old, as recorded in documents filed with **Nevada Secretary of State**. A corporate filing is called a foreign filing when an existing corporate entity files in a state other than the state they originally filed in. This does not

10

necessarily mean that they are from outside the United States.   **Scott Silver** serves as a

**Manager** and has interests in other corporate entities including Sherman Capital Markets LLC,

Mbhc, LLC and nine more corporations. Scott's past corporate affiliations include Sherman

Acquisition II General Partner LLC, Sherman General Partner Ta, LLC and seven others.

**Benjamin Navarro** is a **Manager** of Fnbm, LLC. Benjamin's additional corporate interests

include Mbhc, LLC, Sherman Capital Markets LLC and three more corporations. Benjamin's

past corporate affiliations include Creditassist Financial Services LLC, Sherman Acquisition II

General Partner LLC and nine others.   In addition, is **Brett Hildebrand** is a Manager of Fnbm,

LLC, and has other corporate interests including Mbhc, LLC, Mhc Receivables, LLC . Brett's

past corporate affiliations include Sherman Acquisition II General Partner LLC, Sherman

General Partner Ta, LLC and two others.  FNMB, LLC (Credit One Bank) was at all times

relevant to this complaint, a corporation that has significant business interests, makes significant

commercial transactions and has a continuous systematic presence in the State of Indiana.

Address: 585 Pilot Road, Las Vegas, Nevada 89119

13. TODD KUHL DIRECTOR SHERMAN CAPITAL MARKETS, LLC, elected by the

shareholders to represent their ownership interests, his role is to monitor a corporation's

managers, acting as an advocate for stockholders.  A member of the board of directors tries to

make sure that shareholders' interests are well served.  As a member of the board of directors his

duties include maintaining strong communication with the chief executive officer and high-level

executives, formulating the company's business strategy, representing management and the board

to the general public and shareholders, and maintaining corporate integrity. A chairman is

elected from the board of directors.  The board of directors hires the CEO/MM and then

delegates the day-to-day operation of the corporation to him or her. The CEO reports directly to the board members who define the chief executive's job responsibilities, provide guidance and support as needed and assess the CEO's performance annually. The board formulates the rules of governance for the organization and establishes procedures for oversight of its policies and procedures. When questions of policy arise at the highest levels, the board may be involved in determining the relevance and determining a final outcome. In a small corporation where the board is also comprised of owner/shareholders and management executives, he is responsible for many decisions made by the corporation. Todd Kuhl is being sued in his individual and professional capacity.

Address: 200 Meeting Street, Suite 206, Charleston, SC 29401

14. SHERMAN CAPITAL MARKETS, LLC, incorporated in the State of Delaware, filed as a **Foreign Limited-Liability Company** in the **State of Nevada** on Monday, May 9, 2005 and is approximately nine years old, as recorded in documents filed with **Nevada Secretary of State**. A corporate filing is called a foreign filing when an existing corporate entity files in a state other than the state they originally filed in.   Sherman Capital Markets LLC is located in Charleston, SC. And its industry is listed as Management Consulting Services.  **Scott Silver** serves as a **Manager** and has interests in other corporate entities including Sherman Financial Group LLC, Fnbm, LLC and nine more corporations. Scott's past corporate affiliations include Sherman Acquisition II General Partner LLC, Sherman General Partner Ta, LLC and seven others. **Benjamin Navarro** is a **Manager** of Sherman Capital Markets LLC. Benjamin's additional corporate interests include Sherman Financial Group LLC, Fnbm, LLC and three more corporations. Benjamin's past corporate affiliations include Creditassist Financial Services LLC,

Sherman Acquisition II General Partner LLC and nine others. Sherman Capital Markets, LLC, was at all times relevant to this complaint, a corporation that has significant business interests, makes significant commercial transactions and has a continuous systematic presence in the State of Indiana.

Sherman Capital, LLC, through its affiliated companies, has invested $7B to date and arranged in excess of $3B in financing for portfolio companies. As a privately-held company, Sherman employs a streamlined decision making process and is not constrained by investment timelines and structural restrictions faced by traditional investment funds.  As of December 31, 2006, Sherman reported total assets of $1,204 million and net income of $347 million.  The Sherman Companies include but are not limited to SFG REO, LLC, Sfgmx, LLC, Sherman Acquisition II General Partner LLC, Sherman Acquisition II Limited Partnership, Sherman Acquisition L.L.C., Sherman Acquisition Limited, Market Street partners, II, Sherman Acquisition TA LP, Sherman Capital Markets LLC, Sherman General Partner TA, LLC, Sherman Originator, LLC, Sherman Originator III, LLC, Sherman Financial Group, LLC, First National Bank of Marin, FNBM, LLC, Credit One Bank, N.A., and Credit One Financial, LLC. Address: 200 Meeting Street, Suite 206, Charleston, SC 29401

15. MEETING STREET PARTNERS II, INC. collapsed into SHERMAN CAPITAL. (See 14. SHERMAN CAPITAL MARKETS, LLC)

Address: Registered Agent - The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801

16. BENJAMIN NAVARRO MM OF SHERMAN FINANCIAL GROUP, LLC AND PRINCIPAL OF SHERMAN CAPITAL MARKETS, LLC.  Benjamin's additional

13

corporate interests include <u>Sherman Financial Group LLC</u>, <u>Fnbm, LLC</u> , Cms Gen Partner LLC,

Member at Sfgmx, LLC, and Authorized Representative at Sherman Acquisition II General

Partner LLC & Sherman General Partner Ta, LLC. One of the Benjamin Navarro's top

connections is with Scott Silver. As Managing Member (MM) of the LLC he is an agent of the

company. He has the authority to buy and sell company property in the ordinary course of

business, hire and fire employees, direct company operations and bind the company by entering

into contracts on its behalf. Non-managing members, on the other hand, are not agents of the

company and have no authority beyond that given them in the operating agreement. As principal

of Sherman Capital Markets, LLC he holds an investment in the company. As a Principal of the

Sherman Companies Scott Silver has a substantial ownership interest in the companies. Often

serving on the board of directors and acting as a management executive, he is responsible for

decisions made by the corporation. Benjamin Navarro is being sued in his individual and

professional capacity.

Address: 335 Madison Avenue, Floor 19, New York, NY 10017

17. SCOTT SILVER PRINCIPAL OF SHERMAN FINANCIAL GROUP, LLC

AND PRINCIPAL OF SHERMAN CAPITAL MARKETS, LLC. Scott Silver, also, has an

interest and role in Sherman Originator III, <u>Fnbm, LLC</u>, <u>Mbhc, LLC</u>, <u>Ashley Funding Services</u>

<u>LLC</u>, <u>Tradd Street Holdings LLC</u>, <u>Pinckney Street LLC</u>. One of the Scott Silver's top

connections is with Benjamin Navarro. They hold interests and play major executive roles in

many of the same companies. Scott Silver was elected by shareholders to represent their

ownership interests, his role is to monitor a corporation's managers, acting as an advocate for

stockholders. He is a top tier decision maker, <u>leader</u>, manager and executor of the companies.

14

The decision-making role involves high-level decisions about policy and strategy. As a leader in the companies he motivates employees, and drives change within the organization. As a manager, he presides over some of the organization's day-to-day operations. As a Principal of the Sherman Companies Scott Silver has a substantial ownership interest in the companies. Often serving on the board of directors and acting as a management executive, he is responsible for decisions made by the corporation. Scott Silver is being sued in his individual and professional capacity.

Address: 200 Meeting St. Ste. 206, Charleston, SC 29401

18. RUSTY KENDALL PRINCIPAL OF SHERMAN FINANCIAL GROUP, LLC AND PRINCIPAL OF SHERMAN CAPITAL MARKETS, LLC. Rusty Kendall, also, has an interest and role in Pyod, LLC, and acts as the CFO. Mr. Kendall was elected by shareholders to represent their ownership interests, his role is to monitor a corporation's managers, acting as an advocate for stockholders. He is a top tier decision maker, leader, manager and executor of the companies. The decision-making role involves high-level decisions about policy and strategy. As a leader in the companies he motivates employees, and drives change within the organization. As a manager, he presides over some of the organization's day-to-day operations. As a Principal of the Sherman Companies Mr. Kendall has a substantial ownership interest in the companies. Often serving on the board of directors and acting as a management executive, where the board is also comprised of owner/shareholders and management executives, board members can be held financially and legally responsible for decisions made by the corporation. Rusty Kendall is being sued in his individual and professional capacity.

Address: 200 Meeting St. Ste. 206, Charleston, SC 29401

15

19. SHERMAN FINANCIAL GROUP, LLC, is a wholly owned subsidiary of Sherman Capital Markets, LLC. The Sherman Financial Group, LLC, is an integrated financial services company engaged in purchasing and servicing receivable portfolios acquired at a discount, and originating and servicing credit card receivables. The company consists of numerous asset holding and operating entities throughout the United States and in Mexico City, Mexico. Sherman Financial Group, LLC, is one the country's biggest debt collectors, and is a low-key, big-dollar business that has played in the sandbox of publicly traded firms for about a decade. The closely held enterprise run by **Ben Navarro** quietly exited that arena and went private through a $172 million all-cash buyout. Sherman is a kingpin in what's known as the "accounts receivables management" industry. Its main business: buy distressed debt from credit card issuers and other financiers at deep discounts and then try to collect the unpaid balances at a profit. It also issues charge cards through its Las Vegas-based **Credit One Bank**. Sherman, it's fair to say, has been immensely successful financially. Buried deep in filings with regulators, the firm's revenues have quadrupled between 2002 and last year to about $1.25 billion. Earnings increased from $40 million to $136 million over the same period. And 2009 was an off year for Sherman. In 2007, right before the recession kicked in, the firm booked $266 million in net income on revenues of $1.26 billion for a 21 percent margin. The prior year, Sherman's business was even more lucrative, filings show. Sherman Financial Group LLC ("Sherman") is a highly experienced and active global investment company with a 15-year track record of unparalleled success during a period of vast market fluctuation.

The Sherman Financial Group, LLC, was at all times relevant to this complaint, a corporation that has significant business interests, makes significant commercial transactions and

16

has a continuous systematic presence in the State of Indiana.

Address: 335 Madison Avenue, Floor 19, New York, NY 10017

20. BRETT HILDEBRAND PRINCIPAL FNBM, LLC, and, also, manages Fnbm, LLC.
Mr. Hildebrand holds active roles in two companies, Manager of Mbhc, LLC and Manager of
Mhc Receivables, LLC , and inactive roles in four other companies.  Brett Hildebrand is
connected to other officers through these corporate roles.   Brett Hildebrand hold interests and
plays major executive roles in many of the Sherman companies.  One of his top connections is
Benjamin Navarro who is a Manager for Mbhc, LLC and Fnbm, LLC .  Brett Hildebrand was
elected by shareholders to represent their ownership interests, his role is to monitor a
corporation's managers, acting as an advocate for stockholders.  He is a top tier decision maker,
leader, manager and executor of the company.  The decision-making role involves high-level
decisions about policy and strategy.  As a leader in the companies he motivates employees, and
drives change within the organization.  As a manager, he presides over some of the organization's
day-to-day operations.   As a Principal Mr. Hildebrand has a substantial ownership interest in the
companies.  Often serving on the board of directors and acting as a management executive, Mr.
Hildebrand he is responsible for many top decisions made by the corporation.   Brett Hildebrand
is being sued in his individual and professional capacity.

Address: 585 Pilot Road, Las Vegas, Nevada 89119

21. CEO/MM SHERMAN ORIGINATOR III, LLC, is the head of operations at Sherman
Originator III, LLC, and oversees all aspects of operations and sets policy for the company.  He
has the duty to oversee and monitor all the functions of the various departments in the company
regarding financial transactions and other important functions so as to formulate the rules and

regulations in the company and ensure compliance with State and Federal law. The CEO/MM is responsible for the overall direction and administration of programs and services provided by the company; ensures that all aspects of the company's activities obtain maximum profits commensurate with the best interest of shareholders, customers, employees, and the public. The CEO/MM Reports to the Board of Directors as the highest ranking official of the company. All executive officers of the company report to the CEO/MM. The CEO/MM is directly responsible for attaining all established company operational and financial goals. The CEO/MM is being sued in his individual and professional capacity.

Address: c/o Sherman Capital Markets, 200 Meeting Street, Suite 206, Charleston, SC 29401

22. SHERMAN ORIGINATOR III, LLC, is a wholly owned subsidiary of Sherman Financial Group, LLC. Sherman Originator III, LLC, is a credit card debt purchaser and seller that acts as a collection agency that collects debts nationwide including the State of Indiana. (15 USC 1692 (the FDCPA). Sherman Originator III, LLC, regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. Sherman Originator III, LLC, filed as a **Foreign Limited-Liability Company** in the **State of Nevada** on Monday, December 15, 2008 and is approximately six years old, according to public records filed with **Nevada Secretary of State**. A corporate filing is called a foreign filing when an existing corporate entity files in a state other than the state they originally filed in.

**Scott Silver** serves as a **Manager** and has interests in other corporate entities including Sherman Financial Group LLC, Sherman Capital Markets LLC and nine more corporations. Scott's past corporate affiliations include Sherman Acquisition II General Partner LLC, Sherman General Partner Ta, LLC , etc. **Kevin Branigan** is a **Manager** of Sherman Originator III LLC. Kevin's

additional corporate interests include <u>Lvnv Funding LLC</u>, <u>Pyod LLC</u> and four more corporations. Kevin's past corporate affiliations include <u>Fieldstone Asset Management LLC</u>, <u>Limestone Asset Management LLC</u> and three others.  Sherman Originator III, LLC, was at all times relevant to this complaint, a corporation that has significant business interests, makes significant commercial transactions and has a continuous systematic presence in the State of Indiana. Address: c/o Sherman Capital Markets, 200 Meeting Street, Suite 206, Charleston, SC 29401

23. JON MAZZOLLI, DIRECTOR OF SHERMAN ORIGINATOR III, elected by the shareholders to represent their ownership interests, his role is to monitor a corporation's managers, acting as an advocate for stockholders. A member of the board of directors tries to make sure that shareholders' interests are well served.  As a member of the board directors his duties include maintaining strong communication with the chief executive officer and high-level executives, formulating the company's business strategy, representing management and the board to the general public and shareholders, and maintaining corporate integrity. A chairman is elected from the board of directors.  The board of directors hires the CEO/MM and then delegates the day-to-day operation of the corporation to him or her. The CEO reports directly to the board members who define the chief executive's job responsibilities, provide guidance and support as needed and assess the CEO's performance annually.  The board formulates the rules of governance for the organization and establishes procedures for oversight of its policies and procedures. When questions of policy arise at the highest levels, the board may be involved in determining the relevance and determining a final outcome.  In this small corporation where the board is also comprised of owner/shareholders and management executives, board members can be held financially and legally responsible for decisions made by the corporation.  Jon Mazzolli

19

is being sued in his individual and professional capacity.

Address: c/o Sherman Capital Markets, 200 Meeting Street, Suite 206, Charleston, SC 29401

24. KEVIN BRANNIGAN PRINCIPAL OF SHERMAN ORIGINATOR III, LLC.

**Kevin Branigan,, also, has a role an interest in** Lvnv Funding LLC & Anson Street LLC and is

Director at Sherman Capital Markets LLC.  One of Kevin Branigan's top connections is with

Benjamin Navarro.  They hold interests and play major executive roles in many of the Sherman

Companies.  Kevin Branigan was elected by shareholders to represent their ownership interests,

his role is to monitor a corporation's managers, acting as an advocate for stockholders.  As a

Principal of the Sherman Companies Kevin Branigan has a substantial ownership interest in the

companies.  He is a top tier decision maker, leader, manager and executor of the companies.  The

decision-making role involves high-level decisions about policy and strategy.  As a leader in the

companies he motivates employees, and drives change within the organization. As a manager, he

presides over some of the organization's day-to-day operations.   As a Principal of the Sherman

Companies Mr. Branigan has a substantial ownership interest in the companies.  Often serving

on the board of directors and acting as a management executive, where the board is also

comprised of owner/shareholders and management executives, he is responsible for decisions

made by the corporation.   Kevin Brannigan is being sued in his individual and professional

capacity.

Address: c/o Sherman Capital Markets, 200 Meeting Street, Suite 206, Charleston, SC 29401

25. LES GUTIERREZ PRINCIPAL OF SHERMAN ORIGINATOR III, LLC, was

elected by shareholders to represent their ownership interests, his role is to monitor a

corporation's managers, acting as an advocate for stockholders.  As a Principal of the Sherman

Company Les Gutierrez has a substantial ownership interest in the company. He is a top tier decision maker, <u>leader</u>, manager and executor of the company. The decision-making role involves high-level decisions about policy and strategy. As a leader in the companies he motivates employees, and drives change within the organization. As a manager, he presides over some of the organization's day-to-day operations. Often serving on the board of directors and acting as a management executive, where the board is also comprised of owner/shareholders and management executives, he is responsible for decisions made by the corporation. Les Gutierrez is being sued in her individual and professional capacity.

Address: c/o Sherman Capital Markets, 200 Meeting Street, Suite 206, Charleston, SC 29401

    26. ROBERT RODERICK DIRECTOR OF SHERMAN CAPITAL MARKETS, LLC, was elected by shareholders to represent their ownership interests, his role is to monitor a corporation's managers, acting as an advocate for stockholders. As a Principal of the Sherman Company he has a substantial ownership interest in the company. He is a top tier decision maker, <u>leader</u>, manager and executor of the company. The decision-making role involves high-level decisions about policy and strategy. As a leader in the companies he motivates employees, and drives change within the organization. As a manager, he presides over some of the organization's day-to-day operations. Often serving on the board of directors and acting as a management executive, where the board is also comprised of owner/shareholders and management executives, he is responsible for decisions made by the corporation. Robert Roderick is being sued in his individual and professional capacity.

Address: 200 Meeting Street, Suite 206, Charleston, SC 29401

    27. CHRIS WINKLER CEO/MM RAZOR CAPITAL. As the economy and the debt

markets slid to a decade low in 2008, Robert Johnson and Chris Winkler sought out private funding and formed Razor Capital, LLC in late 2008. Chris Winkler help found RAzOR Capital in 2008 as a new debt buying company. Chris is today the CEO of RAzOR Capital and an active member of the Debt Buyers association (DBA). Chris Winkler is the head of the operations of the company and oversees all aspects of operations and sets company policy. He has the duty to oversee and monitor all the functions of the various departments in the company regarding financial transactions and other important functions so has to formulate the rules and regulations in the company and ensure compliance with State and Federal law. The Chris Winkler as Chief Executive Officer is responsible for the overall direction and administration of programs and services provided by the company; ensures that all aspects of the company's activities obtain maximum profits commensurate with the best interest of shareholders, customers, employees, and the public. The CEO has responsibilities as a top tier director, decision maker, leader, manager and executor of the company. The CEO's role as communicator involves the press and the rest of the outside world, as well as the organization's management and employees; the decision-making role involves high-level decisions about policy and strategy. As a leader of the company, the CEO advises the board of directors, motivates employees, and drives change within the organization. As a manager, the CEO may preside over some of the organization's day-to-day operations. The CEO reports to the Board of Directors as the highest ranking official of the company. All executive officers of the company report to the Chief Executive Officer. The position of Chief Executive Officer is directly responsible for attaining all established company operational and financial goals. Chris Winkler is being sued in his individual and professional capacity.

Address: 8000 Norman Center Drive, Suite 115, Bloomington, MN 55437

28. RAZOR CAPITAL is a national buyer, seller and broker of delinquent consumer receivables. Razor Capital's primary area of debt purchasing revolves around creditor direct credit card portfolios. Razor Capital employs technologically advanced, proven analytics to source and buy debt, drive sales decisions, and manage the collections of debt to enhance the value of the receivables. The principals of RAZOR have an extensive background in credit card collections and purchasing of credit card deals and therefore most of the RAZOR purchasing efforts are placed upon the delinquent credit card market. RAZOR Capital does additionally market, price and purchase other asset class portfolios such as consumer loan portfolios, auto portfolios, DDA portfolios, student loan portfolios, cell phone portfolios, utility portfolios and other unique or niche portfolios that are sold. RAZOR Capital is also active in the re-trade portfolio market when the right portfolios are available for purchase opportunities for the company. The RAZOR principals have purchased over 2 BILLION dollars in distressed consumer portfolios in the last five years of doing business through a number of companies. The prior company started by the principals of RAZOR was sold to a publicly traded company which became a top five debt purchaser in the nation in its second year of doing business. RAZOR Capital has distinct market advantages as a national debt buyer due to its comprehensive analytical functions used for debt purchasing as well as a long track record of substantial and profitable debt purchases made over the last decade. RAZOR also has unique deal access to portfolio sales that most debt purchasers do not have. RAZOR also has market advantages in regards to its capital funding structure that allows for successful debt portfolio purchases. Razor Capital was at all times relevant to this complaint, a corporation that has significant business

23

interests, makes significant commercial transactions and has a continuous systematic presence in the State of Indiana.

Address: 8000 Norman Center Drive, Suite 115, Bloomington, MN 55437

29. CHRIS WINKLER PRINCIPAL OF RAZOR CAPITAL II, LLC, was elected by shareholders to represent their ownership interests, his role is to monitor the corporation's managers, acting as an advocate for stockholders. He is a top tier decision maker, leader, manager and executor of the company. The decision-making role involves high-level decisions about policy and strategy. As a leader in the companies he motivates employees, and drives change within the organization. As a manager, he presides over some of the organization's day-to-day operations. As a Principal Mr. Winkler has a substantial ownership interest in the RAZOR companies. Often serving on the board of directors and acting as a management executive, Mr. Winkler is responsible for many top decisions made by the corporation. Chris Winkler is being sued in his individual and professional capacity.

Address: 8000 Norman Center Drive, Suite 115, Bloomington, MN 55437

30. RAZOR CAPITAL II, LLC, is a wholly owned subsidiary of Razor Capital. Razor Capital II, LLC, has some of the same managers and employees as Razor Capital, Chris Wrinkler and Robert Johnson. Razor Capital II, LLC, is a collection agency who collects debts nationwide including the State of Indiana. Razor Capital II, LLC, is a debt collector as defined by 15 USC 1692 (the FDCPA). Razor Capital II, LLC, regularly collects or attempts to collect , directly or indirectly, debts owed or due or asserted to be owed or due another. Razor Capital II, LLC, is a limited liability company that is filed in 28 states in the U.S. There are 28 companies that go by the name of Razor Capital II, LLC, filed in various states in the U.S. These

24

companies are located in Baltimore Maryland, Bingham Farms Michigan, Bismarck North

Dakota, Blmgtn Minnesota, Bloomington Minnesota, Boise Idaho, Boston Massachusetts,

Charleston West Virginia, Cheyenne Wyoming, Cleveland Ohio, Dallas Texas, Des Moines

Iowa, **Indianapolis Indiana**, Knoxville Tennessee, Little Rock Arkansas, Minneapolis

Minnesota, Montgomery Alabama, New York New York, Oklahoma City Oklahoma, Olympia

Washington, Plantation Florida, Providence Rhode Island, Raleigh North Carolina, Salem

Oregon, Santa Fe New Mexico, and Topeka Kansas. Razor Capital II, LLC, was at all times

relevant to this complaint, a corporation that has significant business interests, makes significant

commercial transactions and has a continuous systematic presence in the State of Indiana.

Address: 8000 Norman Center Drive, Suite 115, Bloomington, MN 55437

31. TODD ANDERSON, DIRECTOR OF OPERATIONS, RAZOR CAPITAL II, LLC,

elected by the shareholders to represent their ownership interests, his role is to monitor a

corporation's managers, acting as an advocate for stockholders. As a member of the board of

directors tries Todd Anderson makes sure that shareholders' interests are well served. As a

member of the board directors his duties include maintaining strong communication with the

chief executive officer and high-level executives, formulating the company's business strategy,

representing management and the board to the general public and shareholders, and maintaining

corporate integrity. A chairman is elected from the board of directors. The board of directors

hires the CEO/MM and then delegates the day-to-day operation of the corporation to him or her.

The CEO/MM reports directly to the board members who define the chief executive's job

responsibilities, provide guidance and support as needed and assess the CEO's performance

annually. The board formulates the rules of governance for the organization and establishes

procedures for oversight of its policies and procedures. When questions of policy arise at the highest levels, the board may be involved in determining the relevance and determining a final outcome. In this small corporation where the board is also comprised of owner/shareholders and management executives, he is responsible for decisions made by the corporation. Todd Anderson is being sued in his individual and professional capacity.

Address: 8000 Norman Center Drive, Suite 115, Bloomington, MN 55437

32. FREDRICK NIELSEN MANAGING MEMBER (MM) RAZOR CAPITAL II, LLC, as Managing Member (MM) of the LLC he is an agent of the company. He has the authority to buy and sell company property in the ordinary course of business, hire and fire employees, direct company operations and bind the company by entering into contracts on its behalf. Non-managing members, on the other hand, are not agents of the company and have no authority beyond that given them in the operating agreement. As a Principal of the Razor Capital II, LLC, Fredrick Nielson has a substantial ownership interest in the companies. Often serving on the board of directors and acting as a management executive (MM), he is responsible for decisions made by the corporation. Fredrick Nielsen is being sued in his individual and professional capacity.

Address: 8000 Norman Center Drive, Suite 115, Bloomington, MN 55437

33. THE STENGER & STENGER LAW FIRM, is primarily a debt collection law firm, based out of Grand Rapids, Michigan and it represents clients throughout the United States including the State of Indiana. Phillip Stenger, attorney and partner at Stenger & Stenger, PC, is the Owner of Capital Alliance Financial LLC. Stenger uses his law firm to collect for his junk debt purchasing entity Razor Capital II, LLC, by suing unsuspecting consumers through multiple

states in the US, including Indiana residents like the Plaintiff Robert Holland. Stenger & Stenger also maintains close working relationships worldwide with various legal, accounting and other experts, whose services are available to Stenger & Stenger on an "as needed" basis. Established in 1994, Stenger & Stenger, P.C. is dedicated to providing health care providers, banks, creditors and debt buyers legal representation in Colorado, Indiana, Georgia, Kentucky, Michigan, Minnesota, and New Jersey. In addition to direct legal representation, Stenger & Stenger also maintains a network of affiliated attorneys to provide nationwide service for clients on both commercial and consumer accounts. Stenger & Stenger employs both, pre-suit and post-judgment collectors and has an in-house skip tracing department to locate consumers. An in-depth strategic scoring model also assists in the evaluation of each account, and determines the approach taken on each file. Stenger & Stenger has personnel that work together toward one goal, recovering as much for our clients as possible. The assembled team of professionals use state-of-the-art computer hardware and software to maximize recovery for our clients. The Firm is committed to providing our clients with the best and most technological resources available to achieve unparalleled results. The technology employed by the Firm allows it to handle a high volume of accounts in an efficient and cost effective manner. The Firm employs a Compliance Officer and has established policies to assure its collection staff complies with federal and state laws and regulations. The Firm has extensive security and procedures in place to insure compliance with laws governing collections as well as our client's requirements, providing our clients with a very high level of security and service. The Stenger & Stenger Law Firm was at all times relevant to this complaint, a corporation that has significant business interests, makes significant commercial transactions and has a continuous systematic presence in the State of

27

Indiana.

Address: 2618 East Paris Avenue SE, Grand Rapids, Michigan 49546

34. PHILIP STENGER, PRINCIPAL OF THE STENGER & STENGER LAW FIRM

**Phillip S. Stenger**, is the founding partner of Stenger & Stenger, P.C. and practices in and

manages all aspects of the Firm including but not limted to Receivership law, Creditor's Rights,

Debt Collection, Debt Collection Litigation, Business and Commercial law and Real Estate

practice groups. **As a principal in the Mr. Stenger is a** top tier decision maker, leader,

manager and executor of the law firm.  The decision-making role involves high-level decisions

about policy and strategy.  As a leader of the law firm, he motivates employees and drives

change within the organization. He presides over most of the organization's day-to-day

operations.  Mr. Stenger is directly responsible for attaining all established operational and

financial goals of the law firm.  Phillip Stenger is being sued in his individual and professional

capacity.

Address: 2618 East Paris Avenue SE, Grand Rapids, Michigan 49546

35. DENISE HALLETT ATTORNEY OF THE STENGER & STENGER LAW FIRM,

is an attorney who files many lawsuits against Indiana consumers on behalf of Razor Capital II,

LLC.  Ms. Hallet files lawsuits in collection cases on behalf of the Stenger & Stenger Law Firm

in the State of Indiana.  She handles all aspects of the litigation including filing claims, debt

verification, pre and post lawsuit correspondence to debtors.  Ms. **Denise M. Hallett**, received

her Bachelor's degree in Economics from Purdue University, with distinction, in 1977, and her

J.D. cum laude from Indiana University, Bloomington, in 1980. She was admitted to the Indiana

State Bar in 1980 and the Illinois State Bar in 1990. She is admitted to practice before the

Northern and Southern Districts of the Federal Court in Indiana, the Northern District of the Illinois Federal Court, and the U.S. Seventh Circuit Court of Appeals. As a bank trust officer early in her career, she managed a portfolio of investments of over $7 million for various fiduciary accounts. Mrs. Hallett has concentrated her practice for the past 30 years in the areas of Consumer Collection, Bankruptcy, Foreclosure and Landlord Tenant Law in the State of Indiana. She speaks frequently on these topics to local Chambers of Commerce, fraternal organizations, and community groups. Denise Hallett is being sued in his individual and professional capacity. Address: 2618 East Paris Avenue SE, Grand Rapids, Michigan 49546

36. DUSTIN H. ALLEN ATTORNEY OF THE STENGER & STENGER LAW FIRM, is an attorney who files many lawsuits against Indiana consumers on behalf of Razor Capital II, LLC. Mr. Allen files lawsuits in collection cases on behalf of the Stenger & Stenger Law Firm in the State of Indiana. He handles all aspects of the litigation including filing claims, debt verification, pre and post lawsuit correspondence to debtors. He is admitted to practice before State and Federal Courts in Indiana. Dustin Allen is being sued in his individual and professional capacity.

Address: 2618 East Paris Avenue SE, Grand Rapids, Michigan 49546

37. STEPHANIE SHARER PARALEGAL OF THE STENGER & STENGER LAW FIRM provides assistance and support to lawyers of the Stenger & Stenger Law Firm through a variety of support-based and administrative duties. As a **paralegal** Ms. Sharer is trained in law and in legal research methods and must a lawyer reviews the paralegal's work product and supervises the performance of duties assigned to the paralegal, the paralegal can not exercise legal judgment, provide legal advice or sign any court documents as a legal representative or

29

give the appearance of acting as an attorney on behalf of the law firm.  All such duties are strictly

the responsibility of the supervising attorney.  Stephanie Sharer is being sued in his individual

and professional capacity.

Address: 2618 East Paris Avenue SE, Grand Rapids, Michigan 49546

## V. THE FACTS OF THE CASE (THE BACKGROUND)

**38. THE ENTERPRISE.**  The Associate in Fact Defendants agreed through a

conspiracy to create, infiltrate, take over, manipulate, maintain an interest in and/or control

of Credit One Bank (FNBM, LLC), Sherman Originator III, LLC, and Razor Capital II, LLC,

operations through a pattern of racketeering and/or through the collection of an unlawful debt.

In addition, the Associate in Fact Enterprise of the Defendants seized influence and/or control

of Credit One Bank (FNBM, LLC), Sherman Originator III, LLC, and Razor Capital II, LLC,

Assets and utilized the companies as a criminal enterprise to further its criminal objectives.

The Associate in Fact Defendants through various corporate legal entities (forms of

corporations) attempt to conceal their ownership interests, commingle their funds, commit

illegal activities, in a scheme to defraud and frustrate and ultimately avoid legal action against

them and did engage in two or more acts (pattern) of racketeering activity and/or the collection

of an unlawful debt, directly or indirectly participated in (and/or aided in) such activity, in an

enterprise the activities of which affected interstate commerce including but not limited to

using the mail, wire and banks to commit their schemes to defraud directly causing substantial

injury to Robert Holland and others similarly situated.

39.     **THE PURPOSE**.  The Plaintiff Robert Holland alleges that the Defendants are

knowingly, willfully and unjustly enriching themselves in a scheme to defraud by and through

illegal collection of unlawful debt and attempts to collect unlawful debt and moneys not owed

to them (fraudulent transactions, illegally fraudulently inflated credit card billing statements,

usury, excessive, fees, fines, etc.) through the use of mail and wire (electronic means) utilizing

financial institutions (mail, wire, and bank fraud, money laundering, etc.) and engaged in a

pattern of criminal activity by and/or through the Credit One Bank (FNBM, LLC), Sherman

Originator III, LLC, and Razor Capital II, LLC, Enterprise and affiliated law firms and courts

and legal entities beyond its control, such as independent banks, western union, law firms,

courts, accounting firms, or public relations firms in violation of 18 USCS 1962 (a), (b), (c)

and (d).

40.    **THE RELATIONSHIPS AMONG THOSE ASSOCIATED WITH THE**
**ENTERPRISE.**

Many of the above defendants have already testified in the case of <u>Cox v. Sherman</u>

<u>Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)</u> regarding their

relationships. The individual defendants together "own, manage, direct, operate, supervise,

and oversee the business activities of all the Sherman business entities." [*Id.* at 6.] **Defendant**

**Navarro** was the Chief Executive Officer of Defendant Sherman Financial Group and

Chairman of Defendant Sherman Capital Markets. [Dkt. 130 at 7-8.] **Defendant Gutierrez**

was Chief Financial Officer of Defendant Sherman Capital Markets and of Defendant

Sherman Financial Group, conducting "financial reporting for all Sherman entities." [Dkt. 130

at 6 (quoting dkt. 130-17 at 9).] **Defendant Silver** is the Vice President of Defendant Sherman

Capital, the General Counsel for Defendant Sherman Capital Markets, and the solitary lawyer

for all the named corporate defendants ....., whose lawyers Defendant Silver oversees. [Dkt.

130 at 6-7.] **Defendant Branigan** is the President for Defendant LVNV, an investment

banker for Defendant Sherman Capital Markets, the Vice President of Defendant Sherman

Financial Group, the Vice President of Defendant Sherman Capital, an officer of Defendant

Sherman Originator III, an officer of Defendant Sherman Originator, and possibly an officer of

Defendant Sherman Acquisition. [Dkt. 130 at 7.] **Defendant Roderick** is a Director at

Defendant Sherman Capital Markets and the Manager of Alegis Group, of which **Defendant**

**Sherman Financial Group is a limited partner, and provides operational review, such as**

**review of the purchasing of Defendant  Sherman Financial Group's credit card accounts.**

[*Id.*] **Defendant Kendall** is the Chief Financial Officer of Defendant Sherman Capital Markets

and the Treasurer of LVNV, preparing daily financial reports for Moody's and banks. [*Id.* at

6.]

The interrelation of the named corporate defendants is as follows: Defendant Sherman

Capital wholly owned Defendants Sherman Capital Markets and Sherman Financial Group,

and Defendant Meeting Street Partners II was collapsed into Defendant Sherman Capital for

"tax reasons." [Dkt. 130 at 3.]  Defendant Sherman Financial Group in turn wholly owns

Defendant Sherman Originator. [Dkt. 130 at 4.]  In addition to owning Defendant Sherman

Originator, Defendant Sherman Financial Group also owns Defendants Sherman Originator

III. [*Id.*]  The Plaintiff (Holland in this case) alleges that **Defendant Sherman Capital does**

**nothing but act as a holding company**, as current owner of Defendant Sherman Financial

Group. [*Id.* at 3-5.] **Defendant Sherman Financial Group is a financial services company,**

**while Defendant Sherman Capital Markets serves as the "investment bankers," raising**

**capital for the other companies.** [*Id.* at 4-5 (quoting dkt. 130-20 at 24).]   The Plaintiff

(Holland in this case) also alleges that Defendants Sherman Originator and  Sherman Originator III are "special purpose vehicles" or "shell companies" that purchase from institutional sellers, which purchases "end up with Razor Capital (through Razor Capital II, LLC) in this instance.

Sherman Originator,  is wholly owned by **Defendant Sherman Financial Group, along with Defendant Sherman Originator's sister companies, Defendants Sherman Originator III and Sherman Acquisition (which all do the same thing). [Dkt. 130 at 3-6.] Defendant Sherman Financial Group** has its own sister company, Defendant Sherman Capital Markets, which are both wholly **owned by Defendant Sherman Capital** (into which Defendant Market Street Partners II has been collapsed, for tax reasons). *[Id.]* **This structure is strikingly reminiscent of the corporate structure in *Wesleyan*, where Judge Barker imputed the contacts of the** Indiana **corporation to the other eight corporations, six limited partnerships, and three individuals that allegedly engaged in constructive fraud, securities violations, and** RICO **violations. *Wesleyan,* 964 F. Supp. 1255.**

## OPERATION AND MANAGEMENT

The individual Defendants Benjamin Navarro, Scott Silver, Jon Mazzolli, Kevin Branigan, Les Gutierrez, Rusty Kendall, and Robert Roderick, together "owned, managed, directed, operated, supervised, and oversaw the business activities of all the Sherman business entities including Credit One Financial and Credit One Bank, LLC."[1]

---

[1] Cox v. Sherman Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)  Id. at 6.

In addition to the common ownership among the corporate defendants in this matter, there is an evident **lack of observance of corporate formalities**. In his deposition,* **Defendant Navarro, CEO of Defendant Sherman Financial Group and owner of Defendant Sherman Capital, stated that he was unsure if he was ever President of Defendant Sherman Financial Group** because the Sherman structure, which **Defendant Navarro** named after his childhood dog, is "not big on titles." [Dkt. 130-15.] A Mr. Michael Bahner, who was also present at Defendant Navarro's deposition, stepped in to remind Plaintiffs' counsel that "in general terms all these companies just self perpetuate, if you want to get general," when Plaintiffs' counsel was attempting to treat each corporate defendants as its own entity. [*Id.*] **Defendant Navarro** was also not certain about which of the corporate defendants he had ownership of, while *__Defendant Kendall,__ CFO and director of Defendant Sherman Capital Markets and Treasurer of Defendant LVNV, also noted that he "would have to see an ownership chart to specify [his] ownership interest in these [Sherman] entities." [*Id.*; Dkt. 130-16.]

**"While Defendant Kendall admitted to having an ownership interest in "Sherman Financial Group," he later clarified that in saying "Sherman Financial Group" he was referring to "[a]ll the Sherman entities,"** and defense counsel even noted, after Defendant Kendall admitted to working for "Sherman Capital Markets," that Defendant Kendall "works for Sherman." [Dkt. 130-16.] **Defendant Kendall further affirms, like *Defendant Roderick, that the "Sherman structure" runs its business by having "informal meetings" on "a variety of different things" by a "wide, varied group of people" who make decisions regarding the defendant corporate entities, including those that do not have**

**employees, such as Defendant LVNV. [*Id.*; 130-19.] Defendant Kendall also confirmed that, at the time that the transactions at issue allegedly occurred, each of the individual defendants were employees at Sherman Capital Markets, which contradicts "Chairman" Defendant Navarro's statement in his deposition. [*Id.*] Just these few depositions make it clear to the Court that what Defendants argue is "a typical corporate family of upstream and downstream entities, sister corporations, and the normal day-to-day functions of some of those entities' executives" is in reality more like an amoeba—a one-celled organism with no definite shape."**

The Sherman companies are in effect collection agencies (debt collectors) that constitute a single economic enterprise based on the companies' "appearance to the public and the actual interdependent relationship between them. The parents name Sherman is apart of practically every subsidiary's name. Furthermore, the parent Sherman Capital provides the investment banking, i.e., strategic planning, advice, management, accounting, purchasing and administrative services for the subsidiaries local offices. Finally, all the companies were managed by "an interlocking directorate" of individuals. Consequently, the Defendants, directly and/or indirectly, are debt collectors under the FDCPA and, therefore, are liable for all violations of the FDCPA committed.

In the alternative, the individual Defendants Chris Winkler, Todd Anderson and Fredrick Nielsen together "owned, managed, directed, operated, supervised, and oversaw the business activities of all the Razor Capital business entities including Razor capital and Razor Capital II, LLC. The Razor Capital companies have joined in a conspiracy with the Sherman companies in the collection of an unlawful debt and are in effect collection agencies (debt

collectors) that constitute a single economic enterprise based on the companies' actual interdependent relationship between them. Consequently, the Defendants, directly and/or indirectly, are debt collectors under the FDCPA and, therefore, are liable for all violations of the FDCPA committed.

**PIERCING THE CORPORATE VEIL**

The above Defendants through a conspiracy to defraud the Plaintiff Robert Holland and others similarly situated are using the above entities functioning as an alter ego or a mere instrumentality of Sherman Capital and it is appropriate to disregard the corporate form and pierce the corporate veil. The relationship between various corporate entities, their directors and officers reveal that such an equitable action is warranted. Some of the corporations are (1) undercapitalized, (2) the absence of corporate records (credit card statements and documents supporting the veracity of the transactions), (3) fraudulent representations by corporate shareholders or directors, (4) use of the corporation to promote fraud, injustice, or illegal activities, (5) commingling of assets and affairs, (6) failure to observe required corporate formalities, (7) the use of similar corporate names, (8) sharing common principal corporate officers, directors, and employees, (9) similar business purposes and (10) sharing office locations, business cards, or telephone numbers, and (11) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

41. **THE LONGEVITY.** The RICO Enterprise has longevity. The scheme has lasted at least from 2006 to date to complete its purpose.

**THE PATTERN**

**42.     MULTIPLE SCHEMES.** CREDIT ONE BANK (N.A.)(a.k.a. FNBM, LLC) is a wholly owned subsidiary of the Sherman Financial Group, LLC.  Credit One Bank, N.A. or Credit One, is a U.S. based bank specializing in credit cards.  The bank is held by CREDIT ONE FINANCIAL, a bank holding company registered in Nevada.  Credit One Financial is a wholly owned subsidiary of Sherman Financial Group, LLC, and as a **bank holding company** it controls the operations of Credit One Bank.

The stream line process begins with **Credit One Bank (N.A.)** (FNBM, LLC), which is a sub-prime credit card issuer that is a U.S. based bank specializing in credit cards.  The bank is held by **Credit One Financial**, a bank holding company registered in Nevada.  Credit One Financial is a wholly owned subsidiary of **Sherman Financial Group, LLC**.  The Credit One Bank logo and advertising/marketing materials are strikingly similar (almost the same) to Capital One Bank.  Credit One Bank targets individuals who have no credit or less than favorable credit that have a difficult time obtaining a credit card and are desperate to have a credit card in a world that it is increasingly a necessity to have one.

The Credit One Bank's credit card generates a "cash cow" of money through a very systematic streamlined process.  First the "cash cow" is first **"birthed"** by targeting subprime customers through the U.S. Mail, Internet and other advertising/marketing materials.  Credit One Bank advertises the ease of obtaining the card and the opportunity for customers to rebuild their credit rating.  Customers that are interested in obtaining the credit card contact Credit One Bank over the phone.  Credit One Bank through its telephone sales representatives make false, deceptive and misleading representations to customers about the credit card to obtain their business.

The "cash cow" is second **"fed"** a regular constant diet of a) fraudulent purchases charged on the Credit One Bank Statement, b) excessively high interest rates (usury), d) undisclosed and unwarranted fees, e) fines, f) service charges, g) extensions of credit limits on closed credit cards (in order to charge more against the card), etc.

Third, the "cash cow" is **"milked"** to obtain as much money from its customers at as low a cost as possible.   Many of these customers have disputed many of the fraudulent charges and fees, etc. generated in the feeding of the cow, made complaints and are dissatisfied.   The Credit One Bank (FNBM, LLC) debt portfolio is sold on an "as is" basis without any warranty as to the enforceability of the data.   The Purchase Agreement has a confidentiality clause not to respond to any inquiry from public, governmental, or administrative authorities.   Sophisticated technology is used on the he voluminous amount of outdated information to sort it to locate the consumer; determine if consumer has filed bankruptcy, is deceased, or is in prison; and the consumer's willingness and/or ability to pay.   This sorting process involves the use of the mail, wire, and electronic devices.   The unlawful debt is allegedly sold to **SHERMAN ORIGINATOR III, LLC**, acting on behalf of **SHERMAN ORIGINATOR, LLC**, since Credit One Bank, as a bank, is limited as to what it can do in its collections efforts.   In effect the sale from Credit One Bank (a Sherman Company) to Sherman Originator (a Sherman Company) is a sale to its self in order not to appear to violate various federal banking laws.   Credit One Bank (N.A.) (FNBM, LLC) finds a knowing and willing debt purchaser, in this instance, **RAZOR CAPITAL II, LLC**, acting on behalf of **RAZOR CAPITAL** to buy the unlawful credit card debt before it is even charged off by Credit One Bank.   Various documents, purchasing

38

agreements, bill of sales, affidavits etc. are fraudulently created in anticipation of litigation to make everything appear to be legal.   Razor Capital, the knowingly unlawful debt purchaser in the conspiracy, then enlists its network of Law Firms (in this case **THE STENGER & STENGER LAW FIRM**) to collect the unlawful debt.  The lawyers initially send low cost dunning letters making false, deceptive, misleading representations to ignorant and unsuspecting former Credit One Bank customers that don't know their legal rights.   This is a significant source of money.

Fourth, the "cash cow" is **"wrangled"** or moneys are wrestled from former Credit One Bank credit card customers, who are ignorant of their legal rights, through threats, intimidation, harassment, and extortionate means to obtain as much money as possible.  **THE STENGER & STENGER LAW FIRM** wrangle or wrestle with former Credit One Bank customers by sending false, misleading and deceptive letters collecting or attempting to collect unlawful debt by threatening legal action knowing full well that many of the former customers don't owe the debt, Razor Capital II, LLC, has no standing to sue and/or the Law Firm has no supporting documents to prove their case in court.

Finally, fifth, the "cash cow" is **"killed and eaten",** a frivolous and <u>malicious</u> lawsuit is filed in a court (in this instance **The Lake Superior Small Claims Court**) that the Stenger & Stenger Law Firm has influence and control over.  The Court knows that the lawsuit has no legitimate basis. In nearly all instances a judgment is obtained, payment arrangements made and/or the Defendant's bank account is frozen or is check is garnished.  If a Defendant fights the lawsuit, the litigation in small claims will become <u>abusive</u>.  The friendly court will require the

Defendant to respond to quite extensive discovery, there will be many continuances and delays by the Stenger & Stenger Law Firm and any tactic will be used to obtain a judgment based on a technicality such as a failure to appear. It is necessary to obtain the judgment on a technicality because there is no valid basis for the lawsuit or the judgment.

**Relatedness.** The racketeering predicate acts that form the pattern "have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise are interrelated by distinguishing characteristics." **Continuity.** The continuity is open ended in that it is threatened to repeat or to extend in the future exemplified by the continuing efforts of the Associate in Fact Defendants to collect the unlawful debt, cause damage to credit, invade privacy defame former credit card customers and frustrate the recovery of damages for the injuries sustained.

## VI. COUNT I RICO – Section 1962(c)  THE CREDIT CARD SCHEME TO DEFRAUD THE CREDIT CARD EXTORTION – Phase 1 (Birthing the Cash Cow)

43.     Robert Holland incorporates by reference paragraphs 1 through 42 and states the following:

44.     The Association in Fact Defendants by and through Credit One Financial and Credit One Bank companies and Credit One Bank CEO Robert Dejong, conspired to defraud its customers, like Robert Holland on or about March 2, 2006, from the Credit One Bank corporate offices via advertising/through marketing materials sent in the mail and communications over the telephone in order to fraudulently induce the Plaintiff Robert Holland at his home located in Gary, Indiana, to obtain a Credit One Bank credit card.

45.     During the month of February 2006, the Plaintiff Robert Holland did receive advertising/marketing materials in the mail from Credit One Bank (FNBM, LLC) soliciting the Credit One Bank credit card.

46.     Credit One Bank (FNBM, LLC) in March 2006 used telephone representatives to offer, take applications for and/or solicit credit cards over the telephone.

47.     The Credit One Bank telephone representative stated that the credit card was just like other credit cards such as Capital One Bank credit card.

48.     The telephone representative are trained and know the major credit card terms and conditions.

49.     The Credit One Bank telephone representative are trained and know that the Credit One Bank credit card has no grace period, which is different from many other credit cards such as the Capital One Bank credit card.

50.     The telephone representatives statements are made to induce potential credit card customers, like the plaintiff Robert Holland, to obtain a Credit One Bank credit card.

51.     The Credit One Bank credit card has no grace period.  After your 30-day billing cycle closes, if you pay the full balance you will still be charged interest.

52.     Robert Holland's Credit One Bank credit card's effective interest rate grossly exceeds the stated interest rate. (**EXHIBIT G – CREDIT ONE BANK STATEMENT**)

53.   The Credit One Bank telephone representatives do not disclose all the material terms and conditions over the phone.

54.   The Plaintiff Robert Holland did in fact rely on the oral representations of the Credit One Bank telephone representative and was induced to act to his injury and/or detriment.

55.   The Plaintiff Robert Holland received his Credit One Bank credit card on or about March 8, 2006 through the mail.

56.   The first Credit One Bank credit card statement was received by Holland on or about April 1, 2006 through the mail.

57.   Holland used his Credit One Bank credit card approximately 3 weeks before he received his first credit card statement.

58.   The Plaintiff Robert Holland complained to Defendant Credit One Bank about the inflated credit card billing statements, excessive fees, fines, etc. after receiving his credit card statement.

59.   Credit One Bank reports its customer information to the three major credit bureaus.

60.   Closing Holland's credit card account approximately one month after opening the account would have caused a negative affect on his credit rating or score.

61.   The individual Defendants Benjamin Navarro, Scott Silver, Jon Mazzolli, Kevin Branigan, Les Gutierrez, Rusty Kendall, Robert Roderick, Todd Kuhl and Brett Hildebrand, together "owned, managed, directed, operated, supervised, and oversaw the business activities

42

of all the Sherman business entities including Credit One Financial and Credit One Bank, LLC."[2]

62.   **THE RACKETEERING ACTIVITY.**  The mail, wire, bank fraud, usury, money laundering, unlawful collection of a debt, extortionate credit transaction, and intentional infliction of emotional distress occurred on or about February 2006, March 2, 2006, March 8, 2006 and April 1, 2006, in the offices of the Credit One Bank affecting interstate commerce (via telephonic communications, dissemination of advertisements, credit card, and credit card statements by U.S. Mail) the false and fraudulent information regarding the Credit One Bank credit card was disseminated to the public through the major credit bureaus.

63.   **As a direct and proximate result** of the Defendants misconduct and the collection of an unlawful debt Robert Holland was injured in his person and property.

**THE CREDIT CARD EXTORTION – Phase 2** (Feeding the Cash Cow)

64.   Robert Holland incorporates by reference paragraphs 1 through 63 and states the following:

65.   The Association in fact Defendants by and through Credit One Financial and Credit One Bank companies and Credit One Bank CEO Robert Dejong in furtherance of the conspiracy did fraudulently charge the Plaintiff Robert Holland's Credit One Bank credit card in August and September 2009 for purchases Holland did not make on his Credit One Bank credit card and charged Holland excessive interest, fees, fines and other charges, etc. by

---

[2] Cox v. Sherman Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)  Id. at 6.

sending credit card statements in the mail from the Credit One Bank corporate offices and electronically over the internet.

66.  On or about September 1, 2009, the Plaintiff Robert Holland was sent through the mail a Credit One Bank credit card statement that had fraudulent purchases charged on the Credit One Bank Statement not authorized by Holland, an excessively high interest rate (usury), unwarranted fees and fines, etc.

67.  On or about September 1, 2009, the Plaintiff Robert Holland disputed on the telephone and in writing to the Defendant Credit One Bank a) the fraudulent purchases charged on the Credit One Bank Statement, b) the inflated credit card billing statements, c) the excessively high interest rate (usury), d) the fees, e) the fines, etc.

68.  The Credit One Bank response to Holland's dispute of the charges was without any valid justification.  Credit One Bank refused to take the charges off the credit card.

69.  On or about October 1, 2009, the Plaintiff Robert Holland was sent through the mail a Credit One Bank credit card statement that had fraudulent purchases charged on the Credit One Bank Statement not authorized by Holland, an excessively high interest rate (usury), unwarranted fees and fines, etc.

70.  On or about October 1, 2009, the Plaintiff Robert Holland disputed on the telephone and in writing to the Defendant Credit One Bank a) the fraudulent purchases charged on the Credit One Bank Statement, b) the inflated credit card billing statements, c) the excessively high interest rate (usury), d) the fees, e) the fines, etc.

71.     There was no oral or written response from Credit One Bank.

72.     Holland made several payments covering purchases he made on the account and informed Credit One Bank that he did not owe the remaining debt.

73.     The last payment was made at the end of the year 2009 and the balance was one thousand one hundred thirty five dollars and fifteen cents ($1,135.15). (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

74.     Credit One Bank did not charge off Robert Holland's credit card account for approximately eight or nine months running up various fees, fines, charges, interest, etc. on the account.

75.     The account balance on August 7, 2010, at the time the balance was allegedly charged off pursuant to the Notice of Claim (Exhibit A)(Exhibit I Credit Report states September 2010) was two thousand five hundred twenty five dollars and seven cents ($2, 525.07) or more than twice the balance after just eight months. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

76.     The Credit One Bank credit card interest effective interest rate charged was in excess of the stated interest rate. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

77.     The Credit One Bank credit card interest effective interest rate charged was more than 4 times the stated interest rate. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

78.     The fees charged on the Credit One bank credit card were not stated in any contract sent to Robert Holland. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

79.     The Plaintiff Robert Holland was not personally notified of any fee change or increase in writing by Credit One Bank. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

80.   The Credit One Bank credit card credit limit was increased to two thousand dollars ($2,000) from nineteen hundred dollars ($1,900) in 2010.  (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

81.   The Credit One Bank credit card credit limit was increased to two thousand dollars ($2,000) from nineteen hundred dollars ($1,900) in 2010 without any prior personal notification from Credit One Bank to Robert Holland.  (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

82.   The Credit One Bank credit card credit limit was increased to two thousand dollars ($2,000) from nineteen hundred dollars ($1,900) in 2010 without any request from Robert Holland to increase the credit limit. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

83.   The Credit One Bank credit card had no available credit because it had surpassed the credit limit but was kept open and Credit One Bank kept charging interest, fees, etc. increasing the amount of debt stated on the credit card.

84.   The minimum payment due was stated as the entire 2, 525.07 in violation of the CCRA. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

85.   The minimum payment due was stated as the entire 2, 525.07 in violation of Credit One Bank policy. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

86.   The service fees charged on the Credit One Bank credit card were not stated in any contract sent to Robert Holland. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

87.     The Plaintiff Robert Holland was not personally notified of any service fee change or increase in writing by Credit One Bank. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

88.     The closed account maintenance fees charged on the Credit One Bank credit card were not stated in any contract sent to Robert Holland. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

89.     The Plaintiff Robert Holland was not personally notified of any closed account maintenance fee change or increase in writing by Credit One Bank. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

90.     The late fees charged on the Credit One Bank credit card were not stated in any contract sent to Robert Holland. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

91.     The Plaintiff Robert Holland was not personally notified of any late fee change or increase in writing by Credit One Bank. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

92.     The interest to be charged on purchases after the credit card is closed was not stated in any contract sent to Robert Holland. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

93.     The Plaintiff Robert Holland was not personally notified that interest was to be charged on purchases after the account is closed in writing by Credit One Bank. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

94.     The interest to be charged on cash advances was not stated in any contract sent to Robert Holland. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

95.     The Plaintiff Robert Holland was not personally notified that interest was to be charged on cash advances after the account is closed in writing by Credit One Bank. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

96.     Interest was charged on cash advances even though Holland never made or requested any cash advance on the Credit One Bank credit card. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

97.     The charges on the credit card statement are false, deceptive and misleading in violation of the FDCPA and not a bona fide error. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

98.     The character, amount and status of the Credit One Bank credit card debt as stated on the bank statement is in violation of the FDCPA and not a bona fide error. (15 USCS Section 1692 d, e, f, and g) (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

99.     Credit One Bank reports its credit card customers account information to the 3 major credit bureaus.

100.    The credit information furnished to the major credit bureaus regarding the Credit One Bank credit card are false, deceptive and misleading and are in violation of the FRCA. (15 USCS Section 1692 d, e, f, and g)

101.    The charges on the credit card statement are in violation of the TILA and the FCBA. (15 USCS 1602, 1632, 1635, 1637, 1640, and 1666, 1681)(12 C.F.R. 226)
(See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

102.    The charges on the credit card statement are in violation of the CCRA. (Section 107, 130, 171 and 172 (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

103.    The individual Defendants Benjamin Navarro, Scott Silver, Jon Mazzolli, Kevin

Branigan, Les Gutierrez, Rusty Kendall, Robert Roderick, Todd Kuhl and Brett Hildebrand,

together "owned, managed, directed, operated, supervised, and oversaw the business activities of

all the Sherman business entities including Credit One Financial and Credit One Bank, LLC."[3]

104.    **THE RACKETEERING ACTIVITY.** The mail, wire fraud, bank fraud, usury, money

laundering, extortionate credit transactions, harassment, unlawful collection of a debt and

defamation occurred on or about August 1, 2009, and September 1, 2009, credit card statements

sent in the mail from March 2006 to 2010 in the offices of Credit One Bank affecting interstate

commerce (via dissemination of credit card statements sent via U. S. Mail, internet and telephone

communications (Credit card statements electronically on internet 2009 as a result of CCRA -

Credit Card Reporting Act) the false and fraudulent information regarding the Credit One Bank

credit card was disseminated to the public through the major credit bureaus.

105.    **As a direct and proximate result** of the Defendants misconduct and the collection of an

unlawful debt Robert Holland was injured in his person and property.

**THE CREDIT CARD EXTORTION – Phase 3** (Milking the Cash Cow - the Stenger &

Stenger Law Firm Mailings)

106.    Robert Holland incorporates by reference paragraphs 1 through 105 and states the

following:

107.    In a scheme to defraud Robert Holland the Defendants in furtherance of the conspiracy

to defraud allegedly sold Holland's Credit One Bank (FNBM, LLC) credit card account

unlawful debt to Sherman Originator III, LLC, who allegedly sold the knowingly unlawful

[3] Cox v. Sherman Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)  Id. at 6.

debt to Razor Capital II, LLC, acting on behalf of Razor Capital, the knowingly unlawful debt purchaser in the conspiracy, then Razor Capital II, LLC, hired the Stenger & Stenger Law Firm to knowingly collect unlawful debt  from ignorant and unsuspecting former Credit One Bank customers that don't know their legal rights.

108.    The last payment was made at the end of the year 2009 and the balance was one thousand one hundred thirty five dollars and fifteen cents ($1,135.15). (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

109.    The plaintiff Robert Holland created no further activity (purchases, withdrawals, etc.) after he made his last payment on December 28, 2009.

110.    Credit One Bank did not charge off Robert Holland's credit card account for approximately eight or nine months running up various fees, fines, charges, interest, etc. on the account.

111.    The account balance on August 7, 2010, at the time the balance was allegedly charged off pursuant to the Notice of Claim (Exhibit A)(Exhibit I Credit Report states September 2010) was two thousand five hundred twenty five dollars and seven cents ($2, 525.07) or more than twice the balance after just eight months. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

112.    Credit One Bank, N.A. originates credit card accounts funded by FNBM, LLC ("FNBM").

113.    The credit card receivables are transferred in the name of FNBM, LLC, under the terms of purchase agreements or bill of sales and sold to a debt buyer.

114.    Credit One Bank or FNMB, LLC, does not give the debt buyer all the original Credit One Bank credit card documents.

115.    Credit One Bank or FNMB, LLC, does not give the debt buyer all the original Credit One Bank credit card statements.

116.    FNMB, LLC, does not give the debt buyer all the original Credit One Bank credit card documents, including credit card statements, customer disputes, correspondence from Credit One Bank to customers, and correspondence from customers to Credit One Bank.

117.    The associate in fact defendants and their agents have engaged in fraudulent debt collection activity by impermissibly pulling credit reports, performing manual and automatic outbound dialer calling activity, sending dunning letters and filing lawsuits against Robert Holland and others similar situated with no legal ownership of the debt nor the supporting documentation to prove their claims.

118.    The associate in fact defendants have a long history of fraudulent debt collection and attempting to collect debt having no proof of alleged ownership and/or no supporting documentation to prove their claims.[4]

119.    The debt buyers Sherman Originator III, LLC, and Razor Capital II, LLC, have insufficient evidence of the alleged debt because the debt buyer is not actually buying the debt but a terminated CDS (Credit default Swap) or bad betting slip.

---

[4] LVNV Funding, LLC vs. Mastaw, 10-C-2671, Tenn. Ct. App. April 30, 2012 and LVNV Funding, LLC vs. Guest, 2012 NY Slip Op 50974 (05-29-12) courts found that since LVNV Funding, LLC, (a Sherman Company) could not provide proof of debt ownership and affidavits generated solely for litigation purposes is not a substitute for evidence of debt ownership.

120.    The U.S. Government has come to the conclusion that the electronic database that the alleged debt buyer purchases 'does not include account documents such as contracts signed by the consumer" and documents "that may substantiate the portfolio's data does not exist."[5]

121.    On December 12, 2009, the Federal Trade Commission (FTC) sent an "Order to File a Special Report" titled "Resolution Directing the Use of Compulsory Process to Study the Practice of Debt Buying" to nine (9) alleged debt buyers including Sherman Financial Group. (a.k.a. SFG)(which includes Sherman Originator, LLC, and Sherman Originator III, LLC)  The FTC concluded that "[t]he system for resolving disputes about consumer debts is broken." And SFG is filing lawsuits based upon insufficient evidence.[6]

122.    On October 25, 2011, the Maryland State Collection Agency Licensing Board issued a Summary Order to Cease and desist and Summary Suspension of Collection Agency Licenses against LVNV and Resurgent. (both are Sherman companies)  The conduct at issue included : (1) "knowingly filing false, deceptive, or deficient affidavits without personal knowledge"; (2) only having a computer database; and (3) no actual signed consumer contract.

123.    When the collection is too costly because consumers like Robert Holland dispute the debt Sherman sells the information to a third party debt buyer like razor capital II, LLC.[7]

---

[5] United States vs. Asset Acceptance, 8:12-CV-182-27Eat (US District Court Middle District of Florida January 30, 2012) Complaint #11, #13.
[6] Findings published in July 2010 FTC Report Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration. Pg. I and II.
[7] See American Acceptance vs. Goldberg; Webb vs. Midland Credit Management, Inc., (NO Ill ED, 11-CV-5111, May 31, 2012) involved Midland purchasing an alleged debt from Sherman. (See Footnote 8).

124.   The Bill of Sale – Business Records Affidavit was signed by Adele Burton and Paula McFarland attesting to the integrity of the files that Sherman Originator III, LLC, sold to Razor Capital II, LLC, regarding the Plaintiff Robert Holland's credit card account is dated on or about September 20, 2010. (**EXHIBIT B – SHERMAN ORIGINATOR III, LLC BILL OF SALE**)

125.   In furtherance of the conspiracy, Adele Burton Portfolio Services Manager of Credit One Bank signed the Bill of Sale (1) "knowingly filing false, deceptive, and/or misleading affidavits without personal knowledge"; (2) only having a computer database; and (3) no actual signed consumer contract in anticipation of litigation. (**EXHIBIT B – CREDIT ONE BANK, N.A. BILL OF SALE Sept. 20, 2010**)  Ms. Burton does not state her education, training or experience, the methods used to determine that the data system is reliable and just how reliable is the data system.

126.   In furtherance of the conspiracy, Paula McFarland Assistant Controller of Credit One Bank signed and notarized the Bill of Sale (1) "knowingly filing false, deceptive, and/or misleading affidavits without personal knowledge"; (2) only having a computer database; and (3) no actual signed consumer contract in anticipation of litigation. (**EXHIBIT B – CREDIT ONE BANK, N.A. BILL OF SALE Sept. 20, 2010**)  Ms. Paula McFarland as Assistant Controller of Credit One Bank knows that the debt is unlawful and cannot be legally sold or collected.

127.   Razor Capital II, LLC, is a debt buyer.

128.   Sherman Originator III, LLC, is a debt buyer and seller.

129.   The purchase and sale agreement between Sherman Originator III, LLC, (As Seller) and Razor Capital II, LLC, (As Buyer) is dated on or about May 13, 2010. (**EXHIBIT H – PURCHASE AND SALE AGREEMENT May 13, 2013**)

130.   The Bill of Sale between Sherman Originator III, LLC, (As Seller) and Razor Capital II, LLC, (As Buyer) allegedly regarding the Plaintiff Robert Holland's credit card account is dated on or about May 14, 2010. (**EXHIBIT J – CREDIT ONE BANK, N.A. BILL OF SALE)**

131.   The Bill of Sale between Sherman Originator III, LLC, (As Seller) and Razor Capital II, LLC, (As Buyer) allegedly regarding the Plaintiff Robert Holland's credit card account is dated on or about September 17, 2010. (**EXHIBIT C – SHERMAN ORIGINATOR III, LLC BILL OF SALE Sept. 17, 2010)**

132.   There are two separate Bill of Sale(s) between Sherman Originator III, LLC, (As Seller) and Razor Capital II, LLC, (As Buyer) allegedly regarding the Plaintiff Robert Holland's credit card account. ( **EXHIBIT C and J – SHERMAN ORIGINATOR III, LLC BILL OF SALEs dated May 14, 2010 and Sept. 17, 2010**

133.   The two separate Bill of Sale(s) between Sherman Originator III, LLC, (As Seller) and Razor Capital II, LLC (As Buyer) allegedly regarding the Plaintiff Robert Holland's credit card account have two different sale dates. ( **EXHIBIT C and J – SHERMAN ORIGINATOR III, LLC BILL OF SALEs dated May 14, 2010 and Sept. 17, 2010)**

134.   The two separate Bill of Sale(s) between Sherman Originator III, LLC, (As Seller) and Razor Capital II, LLC (As Buyer) regarding the Plaintiff Robert Holland's credit card account have two different files with a different number of accounts and total unpaid balances. ( **EXHIBIT C and J – SHERMAN ORIGINATOR III, LLC BILL OF SALEs dated May 14, 2010 and Sept. 17, 2010)**

135.   On or about May 13, 2010, the Plaintiff Robert Holland's Credit One Bank credit card account debt had not been charged off by Credit One Bank.  (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

136.   Credit One Bank owned the Plaintiff Robert Holland's alleged credit card debt on or about May 13, 2010.  **(EXHIBIT I – ROBERT HOLLAND CREDIT REPORT)** (See **EXHIBIT G – CREDIT ONE BANK STATEMENT)**

137.   Sherman Originator III, LLC, (As Seller) on or about May 13, 2010, sold the Credit One Bank credit card accounts computer file (allegedly including Robert Holland's) to Razor Capital II, LLC, (As Buyer). **(EXHIBIT H – PURCHASE AND SALE AGREEMENT May 13, 2010)(Also See EXHIBITS B, C and J)**

138.   Sherman Originator III, LLC, did not own the Plaintiff Robert Holland's credit card debt.

139.   Razor Capital II, LLC, did not own the Plaintiff Robert Holland's credit card debt.

140.   Sherman Originator III, LLC, did not own the Plaintiff Robert Holland's credit card debt on or about May 13, 2010, because the credit card debt account had not been charged off by Credit One Bank. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

141.   Sherman Originator III, LLC, did not own the Plaintiff Robert Holland's credit card debt on or about May 13, 2010, because the credit card debt account had not been closed by Credit One Bank.

142.   Credit One Bank is a Sherman company. [8]

143.   FNBM, LLC, is a Sherman Company.[9]

144.   SHERMAN ORIGINATOR is a Sherman Company.[10]

145.   SHERMAN ORIGINATOR III, LLC, is a Sherman company.[11]

146.   The Plaintiff Robert Holland disputed the debt allegedly owed on the Credit One Bank credit card statement. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

147.   The Plaintiff Robert Holland communicated that he did not owe the debt on the Credit One Bank credit card statement. (See **EXHIBIT G – CREDIT ONE BANK STATEMENT**)

148.   Razor Capital and Razor Capital II, LLC, are debt buyers and debt collectors. (See Razor Capital website) **(EXHIBIT K – TODD ANDERSON AFFIDAVIT OF VERIFICATION/VALIDATION)**

---

[8] See Cox v. Sherman Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)
[9] See Cox v. Sherman Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)
[10] See Cox v. Sherman Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)
[11] Cox v. Sherman Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)

149.   Razor Capital wholly owns Razor Capital II, LLC.

150.   Razor Capital II, LLC, has many of the same owners and managers as Razor Capital. (See Razor Capital website)

151.   Chris Winkler is an owner of Razor Capital and Razor Capital II, LLC. (See Razor Capital website)

152.   Chris Winkler is a manager (CEO) of Razor Capital and Razor Capital II, LLC. (See Razor Capital website)

153.   CEO of Razor Capital II, LLC, **Chris Winkler** signed the purchase and sale agreement between Razor Capital II, LLC, (As Buyer) and Sherman originator III, LLC (As Seller) on or about May 27, 2010. (**EXHIBIT H – PURCHASE AND SALE AGREEMENT May 13, 2013**)

154.   **Fredrick Nielson** is the managing Member of Razor Capital, II, LLC.  As Managing Member (MM) of the LLC he is an agent of the company. He directed the purchase of the Credit One Bank credit card debt from Sherman Originator III, LLC, and was responsible for the hire of the Stenger & Stenger Law Firm to collect on the debt in the ordinary course of business.

155.   Fredrick Nielson as a Principal of the Razor Capital II, LLC, has a substantial ownership interest in the companies and is responsible for decisions made by the corporation.

156.   Director of Sherman Originator III, LLC, Jon Mazzolli signed the debt purchase and sale agreement between Razor Capital II, LLC, (As Buyer) and Sherman Originator III, LLC,

on or about May 18, 2010 (As Seller).  (**EXHIBIT H – PURCHASE AND SALE AGREEMENT May 13, 2010**)

157.   Director of Sherman Originator III, LLC, Jon Mazzolli signed the debt Bill of Sale between Razor Capital II, LLC, (As Buyer) and Sherman originator III, LLC (As Seller) on or about May 14, 2010. (**EXHIBIT C – SHERMAN ORIGINATOR III, LLC BILL OF SALE**)

158.   Director of Sherman Originator III, LLC, Jon Mazzolli signed the debt Bill of Sale between Razor Capital II, LLC, (As Buyer) and Sherman Originator III, LLC (As Seller) on or about September 17, 2010. (**EXHIBIT C – SHERMAN ORIGINATOR III, LLC BILL OF SALE**)

159.   Todd Anderson is Director of Operations of Razor Capital II, LLC, and signed the non-notarized affidavit of debt without personal knowledge of the events alleged therein attached to the Notice of Claim (lawsuit) filed in the Lake Superior Small Claims Court located in Crown Point, Indiana by Denise Hallett of the Stenger & Stenger Law Firm. (**EXHIBIT A – RAZOR CAPITAL II, LLC SC NOTICE OF CLAIM**)

160.   On or about June 25, 2011, before filing the Notice of Claim Todd Anderson Director of Operations for Razor Capital II, LLC, signed an affidavit verifying/validating the alleged Credit One Bank credit card debt of Robert Holland. (**EXHIBIT K – TODD ANDERSON AFFIDAVIT OF VERIFICATION/VALIDATION**)

161.   Todd Anderson Director of Operations for Razor Capital II, LLC, signed an affidavit verifying/validating the alleged Credit One Bank credit card debt of Robert Holland.  The typewritten affidavit date was manually changed from 2011 to 2012 **(EXHIBIT K – TODD ANDERSON AFFIDAVIT OF VERIFICATION/VALIDATION)**

162.   **THE STENGER & STENGER LAW FIRM**) on July 26, 2011, sent a low cost dunning letter in the mail making false, deceptive, misleading representations to Robert Holland. **(EXHIBIT D – STENGER & STENGER LAW FIRM LETTER July 26, 2011)**(FDCPA 15 USCS 1692 d, e, f, and g)

163.   The individual Defendants Benjamin Navarro, Scott Silver, Jon Mazzolli, Kevin Branigan, Les Gutierrez, Rusty Kendall, and Robert Roderick, Todd Kuhl and Brett Hildebrand, together "owned, managed, directed, operated, supervised, and oversaw the business activities of all the Sherman business entities including Credit One Financial, Credit One Bank, LLC, and Sherman Originator III, LLC."[12]

164.   **THE RACKETEERING ACTIVITY.**  The acts of the defendants violated Robert Holland's rights pursuant to RICO 18 USC 1962, FDCPA, FCRA, TILA, FCBA, CCRA, Hobbs Act, Indiana Civil RICO, Bad Faith Breach of Contract, **Fraud, Common Law Fraud,** Mail Fraud, Wire Fraud, Fraud, Extortion, Usury, Harassment, Defamation, Unlawful Collection of a Debt and various theories of common law and negligence, including but not limited to fraud/misrepresentation, negligence, negligent training and supervision, gross negligence, abuse of process, malicious prosecution, defamation, invasion of privacy, civil conspiracy, and intentional infliction of emotional distress against the Defendants, jointly and severally and occurred on or about the above listed dates in the offices of the

---

[12] Cox v. Sherman Capital LLC, 2013 U.S. Dist. LEXIS 186865 (S.D. Ind., Sept. 30, 2013)  Id. at 6.

Defendants Credit One Bank, Sherman Originator III, LLC, Razor Capital and Razor Capital II, LLC, and the Stenger & Stenger Law Firm affecting interstate commerce (via dissemination records; telephone, fax, electronic, email, and U.S. Mail, communications. The false and fraudulent information was published by disseminated to the Lake County Clerk, Lake County Courts and major credit bureaus.

165. **As a direct and proximate result** of the Defendants misconduct and the collection of an unlawful debt and attempts to collect an unlawful debt Robert Holland was injured in his person, property, business and profession.

**THE CREDIT CARD EXTORTION – Phase 4** (Wrangling the Cash Cow – Harassment, the threat of legal action)

**2011-2013 Malicious Prosecution and Abuse of the Legal System for an ulterior motive**

166. Robert Holland incorporates by reference paragraphs 1 through 165 and states the following:

167. The Stenger & Stenger Law Firm is a debt collector. (EXHIBITS D, E, F)

168. The Stenger & Stenger Law Firm attempted to collect the Credit One Bank credit card debt of Robert Holland on behalf of Razor Capital, II, LLC, in a letter sent in the mail dated on or about July 26, 2011, prior to filing the Notice of claim (small claims lawsuit). **(EXHIBIT D – STENGER & STENGER LAW FIRM LETTER July 26, 2011)**

169. The Stenger & Stenger Firm attempted to collect the Credit One Bank credit card debt of Robert Holland on behalf of Razor Capital, II, LLC, in a letter sent in the mail dated on or

about May 30, 2012, signed by attorney Dustin Allen. (**EXHIBIT E – STENGER & STENGER LAW FIRM LETTER May 30, 2012**) (FDCPA 15 USCS 1692 d, e, f, and g)

170.     The Stenger & Stenger sent correspondence regarding the Credit One Bank credit card debt of Robert Holland on behalf of Razor Capital, II, LLC, in a letter sent in the mail dated on or about March 13, 2013, signed by paralegal Stephanie Sharer. (**EXHIBIT F – STENGER & STENGER LAW FIRM LETTER March 13, 2013**)(FDCPA 15 USCS 1692 d, e, f, and g)

171.     The Stenger & Stenger filed a Notice of Claim (lawsuit) in the Lake County, Indiana Small Claims Court regarding the Credit One Bank credit card debt against Robert Holland on behalf of and at the direction of Razor Capital, II, LLC, on or about November 28, 2011.
(**EXHIBIT A – RAZOR CAPITAL II, LLC SC NOTICE OF CLAIM**)(FDCPA 15 USCS 1692 d, e, f, and g)

172.     The Associate in Fact Defendants in furtherance of the conspiracy used as an enterprise the Credit One Bank, Sherman Originator III and Razor Capital II, LLC Enterprise which engaged in, or the activities of which affect, interstate or foreign commerce, hired the Stenger & Stenger Law firm to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity and/or collection of unlawful debt.

173.     The Stenger & Stenger filed a Notice of Claim (lawsuit) in the Lake County, Indiana Small Claims Court regarding the Credit One Bank credit card debt against Robert Holland at the direction of Razor Capital, II, LLC, on or about November 28, 2011. (**EXHIBIT A – RAZOR CAPITAL II, LLC SC NOTICE OF CLAIM**)

174.    The Stenger & Stenger Law Firm at the direction of Razor Capital II, LLC, filed a false, misleading, and deceptive frivolous Notice of Claim against Robert Holland in the small claims court in Crown Point, Indiana.

175.    The Stenger & Stenger Law Firm acting at the direction of Razor Capital II, LLC, used the legal process to harass, frustrate, annoy, intentionally inflict emotional distress, and increase litigation costs in the case.

176.    The Stenger & Stenger Law Firm acting on behalf of Razor Capital II, LLC, requested several continuances of hearings, continuances on the date of trial, 2 sets of discovery from Robert Holland, failed to cooperate in discovery, filed motions to dismiss not in writing and on the day of trial that were procedurally and substantively improper in the context of debt collection proceedings in small claims court.

177.    The Stenger & Stenger Law Firm by and through their attorney Denise Hallett engaged in prohibited *ex parte* communications and requested a dismissal of the small claims case after approximately 2 years of litigation ending approximately the end of the year 2013 that were procedurally and substantively improper in the context of debt collection proceedings in small claims court.

178.    The Stenger & Stenger Law firm by and through their attorney Denise Hallett acting at the direction of Razor Capital II, LLC, conspired to deprive Robert Holland of his constitutional right to due process and equal protection of the law and damages.

179.    The Stenger & Stenger Law firm by and through their attorney Denise Hallett acting at the direction of Razor Capital II, LLC, knowingly and intentionally (1.) filed false, deceptive or deficient affidavits with regard to the affiant's personal knowledge; (2.) misrepresented the

character, amount and status of the debt claimed (3). Attempted to collect an unlawful debt (4).

attempted to collect an impermissible compound interest and prejudgment interest at

unauthorized rates; (5.) filed the small claims lawsuit in spite of the fact that Razor Capital II,

LLC, did not have valid title of the consumer claims at issue and (6). Failed to investigate the

debt prior to filing the lawsuit (6). Never validated the debt and (7). made false statements

against Robert Holland in court by filing the lawsuit

180.    The Lake County Superior Court Small Claims court and court personnel knew or should

have known that the Notice of Claim (lawsuit) filed and litigated by the Stenger & Stenger Law

Firm by and through attorney Denise Hallett regarding the Credit One Bank credit card debt

against Robert Holland was frivolous. (**EXHIBIT A – RAZOR CAPITAL II, LLC SC**

**NOTICE OF CLAIM)**

181.    The Associate in Fact Defendants intended to deceive the Plaintiff Robert Holland into

believing that they were just collecting on a legitimate debt by designing and implementing a

collection enterprise that gave the appearance of their ownership of the debt and that they had

supporting documentation to prove their claims.

182.    The Defendants conspired and agreed to accomplish an unlawful purpose or a lawful

purpose by unlawful means" and each of the defendants "knowingly and voluntarily participated

in a common scheme to commit an unlawful act or a lawful act in an unlawful manner."

183.    **THE RACKETEERING ACTIVITY.** The acts of the defendants violated Robert

Holland's rights pursuant to the First, Fifth and Fourteenth Amendment to the United States

Constitution, Due Process, Equal Protection, RICO 18 USC 1962, FDCPA, FCRA, FCBA,

TILA, CCRA, Hobbs Act, Travel Act, Indiana Civil RICO, the Indiana State Constitution, Bad

Faith Breach of Contract, Theft, **Fraud, Common Law Fraud,** Mail Fraud, Wire Fraud, Fraud,

Bank Fraud, Extortion, Usury, Money Laundering, Harassment, Defamation, Unlawful

Collection of a Debt and various theories of common law and negligence, including but not

limited to fraud/misrepresentation, negligence, corrupt business influence, negligent training and

supervision, gross negligence, abuse of process, malicious prosecution, defamation, invasion of

privacy, civil conspiracy, and intentional infliction of emotional distress against the Defendants,

jointly and severally and occurred on or about the above listed dates in the offices of the

Defendants Credit One Bank, Sherman Originator III, LLC, Razor Capital and Razor Capital II,

LLC, and the Stenger & Stenger Law Firm affecting interstate commerce (via dissemination

records; telephone, fax, electronic, email, and U.S. Mail, communications.  The false and

fraudulent information was published and disseminated to the public in the Lake Superior Small

Claims Court, Lake Superior Small Claims Clerk and major credit bureaus.

184.    **As a direct and proximate result** of the Defendants misconduct and the collection of an

unlawful debt and attempts to collect an unlawful debt Robert Holland was injured in his person,

property, business and profession.

**THE STATUTE OF LIMITATIONS**

185.    Because RICO liability arises from a pattern of racketeering activity, a RICO

Claim cannot accrue at the time of the first predicate act. So if that act happened to occur more

than four years before the second act [forming the pattern], the damage caused by the first act

would still be recoverable in a RICO suit.   There is a six year statute of limitations for fraud and

breach of contract.  The lawsuit brought in small claims court by Razor Capital and the Stenger

& Stenger Law Firm ending on or about November 13, 2013, revealed many violations of law not known before by Holland that were concealed by the Defendants and revived the FDCPA, FCRA, TILA and CCRA claims. Also, the <u>continuing violations</u> have been repeated over time and involve the Associate in Fact Defendants acting in concert in order to deprive the plaintiff of his rights and injure him. (Conspiracy)

## I.    CAUSES OF ACTION

### COUNT I
### RICO, 18 U.S.C.S. 1962(c)
### (RICO and Indiana Civil RICO)

186.    Plaintiff Robert Holland incorporates paragraphs 1 through 182 and states the following:

187.    The Defendants 1) are all persons (2) who were employed by and/or associated with the enterprise (3) that engaged in or affected interstate commerce through mail fraud, wire fraud, bank fraud, etc. and that (4) the defendant persons operated or managed the enterprise using their positions of power and authority (5) through a pattern and/or the unlawful collection of a debt (6) of racketeering activity, including but not limited to, mail fraud, wire fraud, bank fraud, unlawful collection of a debt, money laundering, extortion, harassment, intimidation, conspiracy to defraud, perjury, and corrupt business influences, etc. and (7) the plaintiff was injured in his person, business, profession and/or property by reason of a long term pattern of racketeering activity and/or collection of an unlawful debt that is continuous and repeated with no end in sight.

### COUNT II
### RICO, 18 U.S.C.S. 1962(a)
### (RICO and Indiana Civil RICO)

188.   Plaintiff Robert Holland incorporates paragraphs 1 through 184 and states the following:

189.   The Defendant persons have violated the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962(a), by (1) receiving income from a pattern of

racketeering activity and/or through the collection of an unlawful debt; (2) using and/or investing

that income in the operation of the enterprise; and (3) causing the injury complained of by the use

or investment of racketeering income and/or through the collection of an unlawful debt in an

enterprise.

**COUNT III**
**RICO, 18 U.S.C.S. 1962(b)**
**(RICO and Indiana Civil RICO)**

190.   Plaintiff Robert Holland incorporates paragraphs 1 through 186 and states the following:

191.   The Associate in Fact Defendants acquired or maintained, "through a **pattern** of

racketeering activity and/or collection of an unlawful debt," directly or indirectly, an interest in or

control of the Credit One Bank, Sherman Originator III, LLC and Razor Capital II, LLC,

enterprise which engaged in, or the activities of which affect, interstate or foreign commerce.

**COUNT IV**
**RICO, 18 U.S.C.S. 1962(d)**

192.   The Plaintiff Robert Holland incorporates paragraphs 1 through 188 and states the

following:

193.   The Defendants have unlawfully, knowingly and willfully, conspired and agreed with

others known and unknown to violate 18 U.S.C. 1962(a), (b) and (c) as described above, in

violation of 18 USC § 1962(d).

194.   The Defendants 1) agreed, as alleged and evidenced by their concerted false statements,

false representations, "activities" and omissions to act that all have a common goal and purpose

66

to injure Robert Holland in his person, business, property and profession, to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that the defendants further agreed, as alleged and evidenced by their false statements, false representations and activities that someone would commit at least two predicate acts to accomplish those goals.

## COUNT V
## Indiana Civil Conspiracy

195.    The Plaintiff Robert Holland incorporates paragraphs 1 through 191 and states the following:

196.    The Defendants acting in combination agreed to engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means and that each of the defendants knowingly and voluntarily participated in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.

197.    The defendants acted in concert with another party in the commission of an independent tort (fraud, bad faith breach of contract, malicious prosecution, abuse of process, defamation, corrupt business influence, intentional infliction of emotional distress, etc.) resulting in damages as a result of that agreement.

## VII. RELIEF SOUGHT

WHEREFORE, the Plaintiff requests that this Court:

a. Award compensatory, consequential, treble and punitive damages pursuant to the United States Constitution, RICO 18 USC 1962, FDCPA, FCRA, TILA, CCRA, IDCPA, Hobbs Act, Travel Act, Indiana Civil RICO, the Indiana State Constitution, Bad faith Breach of Contract, Theft, **Fraud, Common Law Fraud, (23),** Mail Fraud, Wire Fraud, Fraud, Bank Fraud,

Extortion, Usury, Money Laundering, Harassment, Defamation, and Unlawful Collection of a

Debt and various theories of common law and negligence, including but not limited to

fraud/misrepresentation, bad faith breach of contract, negligence, corrupt business influence, negligent

training and supervision, gross negligence, abuse of process, malicious prosecution, defamation, invasion

of privacy, civil conspiracy (Indiana), and intentional infliction of emotional distress against the

Defendants, jointly and severally.

b.      Award costs of this action to the Plaintiff pursuant to 18 U.S.C. 1962 (RICO), Indiana

Civil RICO, Indiana Civil Conspiracy and State Law.

c.      and for all such other and further relief as this Court may deem just and appropriate

including the injunctive relief requested in this case.

## VIII. DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand a jury trial pursuant to Trial Rule 38(b).

## VERIFICATION

I, Robert Holland, affirm under the penalties for perjury that the foregoing

representations in the above Verified Complaint are true based on his personal knowledge and

belief.

Robert M. Holland III, Pro Se Plaintiff

1120 Baker Street

Gary, Indiana 46404